Larry James JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–87–00469–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 26, 1988.

Connie Brown Williams, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Houston, for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

OPINION

EVANS, Chief Justice.

A jury convicted the appellant of theft, and the court assessed his punishment at 10 years confinement, probated.

In his sole point of error, the appellant contends that his confession was inadmissible because it was obtained as a result of his illegal detention and in violation of his fourth amendment rights. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In considering this point of error, we must first determine whether the appellant was detained within the meaning of the fourth amendment to the United States Constitution; if not, there was no fourth amendment violation. *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983).

■ Whether a person has been "seized" for purposes of the fourth amendment depends on all the circumstances relating to the occurrence. The test is whether, in the light of the particular circumstances, a reasonable person would have believed that he or she was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

The appellant, a delivery courier, was assigned to deliver six boxes of computer parts. When the intended recipient of the equipment reported that five of the six boxes had not been received, the appellant's employer hired a private investigator to probe the theft of the boxes. The investigator interviewed the appellant, who explained that he unsuccessfully tried to deliver the boxes on two occasions, and finally returned them to his employer's problem package department. The investigator then asked the appellant if he would mind talking with the policeman assigned to the case at the police department's "cargo theft" department. The appellant agreed to go to the police station and talk to the police officer, and the two men drove to the cargo theft office and arrived there around 1:30 p.m. The investigator introduced the appellant to a police sergeant, who escorted the appellant to a small interview room, away from the large, noisy main office.

The police sergeant told the appellant that he was a suspect and read his legal rights to him. The officer then questioned the appellant about the case and prepared a statement for the appellant to sign. In his statement, the appellant described the events as he had told them to the private investigator, i.e., that he had returned the boxes to the problem package department at his employer's office after he had twice been unable to deliver the packages. Before the appellant signed the statement, the police sergeant read the legal warnings printed at the top of the form, which the appellant initialed and said he understood. The form was entitled: "Statement of a Person in Custody."

When the appellant completed this written statement, the police sergeant asked him whether he would be willing to take a polygraph test to support his statement. The appellant agreed. The officer arranged for the appellant to take the polygraph test at the next available time, which was 4 p.m. The officer left the appellant alone in the interview room until it was time for the test. The officer testified at trial that he asked other officers to "keep an eye on" the appellant while he, the officer, was not with him; but the officer also testified that the appellant was free to leave at any time.

After the polygraph test, the police sergeant and the appellant returned to the interview room. The officer told the appellant that he had not passed the polygraph test, and began to question him again, this time more directly and abruptly. The door to the interview room was closed, and the appellant testified that he did not feel free to leave. This time, the appellant told a different story. He said that when he could not deliver the boxes for the second time, he left them beside the locked door at the place he was supposed to have delivered them. The police sergeant told the appellant that he did not believe this story and continued to question appellant. Both the officer and the appellant testified that the appellant became "upset," and when he was permitted to call his mother, he was sobbing as he spoke to her on the telephone. The appellant then gave another

statement, in which he confessed that he had sold the computer parts to an acquaintance. The officer typed this statement and presented it to the appellant to sign. The officer again read the appellant's rights to him, and he signed the statement, which was admitted into evidence at his trial.

■ Although the appellant voluntarily accompanied the private investigator to the police station, and never objected to being questioned by the police officer, the circumstances strongly suggest that a reasonable person would have believed that he was not free to leave the police station premises. Although the appellant's first written statement was not incriminating, and he voluntarily cooperated with the police during the investigation, he was admittedly the only suspect in the case, and the entire investigation focused upon his activities.

After the appellant failed the polygraph test, the circumstances even more strongly show that he was being held in custody. Although the police sergeant testified that the appellant was still free to leave after taking the polygraph test, that fact was clearly not communicated to the appellant. The police officer took the appellant back into the small interview room, told him he had not passed the test, and when appellant gave a different version of the events, the officer told him that he did not believe him. The officer testified that his questioning became more abrupt and pointed, until finally the appellant admitted the theft. We thus conclude that the appellant was held in detention for purposes of the fourth amendment.

■ Our next inquiry is whether the appellant's detention was illegal. A reasonable suspicion of criminal activity, which may fall short of probable cause to arrest, justifies a temporary detention for questioning. *Florida v. Royer*, 460 U.S. at 498, 103 S.Ct. at 1324. But such questioning is generally limited to the purpose of an investigatory stop. *Id.* at 499, 103 S.Ct. at 1324; *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, the police may not employ tactics that are

equivalent to the conditions of an arrest, and absent probable cause, a reasonable suspicion that a person was involved in criminal activity does not justify custodial interrogation. *Florida v. Royer,* 460 U.S. at 499, 103 S.Ct. at 1324; *Dunaway v. New York,* 442 U.S. 200, 211–12, 99 S.Ct. 2248, 2255–56, 60 L.Ed.2d 824 (1979).

■ We conclude that a temporary detention and the initial questioning of the appellant was based on a reasonable suspicion of criminal activity. Appellant was the last person in possession of the stolen goods, and he failed to adequately account for their disappearance. The initial detention and questioning of the appellant were limited to the purpose of the detention and did not approach the conditions of arrest.

■ However, after the appellant failed the polygraph test, the police sergeant's questioning became the substantial equivalent of custodial interrogation. The questioning was abrupt and direct, and the officer accused the appellant of lying when appellant changed his story. The interrogation proceeded for about two hours after the appellant failed the polygraph test, and such questioning was a continuation of the investigation that had begun much earlier in the day. Thus, we move to the question of whether the police sergeant had probable cause for the appellant's arrest after the appellant failed the polygraph test.

■ We conclude that at the time custodial interrogation began, there was probable cause for the appellant's arrest, notwithstanding the officer's statement that he did not believe he had probable cause. We note in this respect that we are not bound by the officer's subjective conclusion about whether probable cause existed, but must independently scrutinize the objective facts. *Townsley v. State,* 652 S.W.2d 791, 796 (Tex.Crim.App.1983). We hold that probable cause existed because: (1) the appellant failed to account for valuable property entrusted to his possession when called upon to do so, *see Bass v. State,* 464 S.W.2d 668 (Tex.Crim.App.1971); *Larkin v. State,* 248 S.W.2d 134, 139–40 (Tex.Crim. App.1950) (op. on reh'g); (2) he gave the investigating officers inconsistent state-

ments about his handling of the goods, *see Jackson v. State,* 745 S.W.2d 4, 10 (Tex. Crim.App.1988) (suspect's evasive and implausible statements to police a factor in finding probable cause); *Romero v. State,* 709 S.W.2d 53, 55 (Tex.App.—Fort Worth 1986, no pet.) (suspect's lies to police a factor in finding probable cause); and (3) he failed the polygraph test. Although the polygraph test was not admissible upon a trial of appellant's guilt, it was one circumstance that the investigating officers could reasonably consider in determining whether there was probable cause to believe that the appellant had committed the theft. *See Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (probable cause does not require only admissible evidence sufficient to convict the suspect). Since there was probable cause for the appellant's arrest, the officer was justified in interrogating the appellant, and there was no fourth amendment violation. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. There is no question that the appellant was given his *Miranda* warnings before making the confession, and the confession is not challenged on any constitutional basis other than the fourth amendment.

The appellant's sole point of error is overruled.

The judgment of the trial court is affirmed.

SAM BASS, Justice, dissenting.

I respectfully dissent from the majority opinion.

The circumstances of this cause indicate that the appellant was not initially "seized" or detained at the cargo theft office of the police department. Officer LeMoine testified that there were "bathroom breaks" during the questioning and that he gave the appellant a candy bar and something to drink at some point. Appellant had agreed to talk to police and later also agreed to take the polygraph test. On the other hand, appellant was told that he was a suspect, was read his rights, and signed a

statement on a form that read "Statement of a Person in Custody."

Given the circumstances, I would find that until this point, a reasonable man would have believed that he was free to leave.

However, I reach a different conclusion with regard to the period of time following the polygraph test. Officer LeMoine testified that the appellant was still free to leave after the polygraph test, and that he had no probable cause to arrest the appellant or file a case at that point, but appellant's testimony and the circumstances make clear that this was not in any way communicated to him. After the test, LeMoine took him back to the small interview room, and told him that he failed the polygraph exam. When the appellant then gave a different version of events, LeMoine told him that he did not believe him and continued questioning him.

The questioning became more abrupt and direct than before. Appellant testified that upon entering the interview room, LeMoine closed the door and put a chair behind it; however, LeMoine denied this. LeMoine was aware that appellant had begun work at 3:30 a.m. that morning, but continued to question him into evening until appellant eventually confessed. Appellant agreed to sign another statement, this one incriminating, on another form entitled "Statement of a Person in Custody." LeMoine testified that appellant became so upset during questioning that LeMoine had to wait a few minutes for him to calm down before LeMoine asked him to sign his confession. I agree with the majority that appellant was "seized" for purposes of the fourth amendment after the polygraph test.

The next inquiry is whether the appellant's detention was illegal, and it is here that I disagree with the majority. Although a person may be detained temporarily based on less than probable cause, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police may not, during such a "temporary" detention, employ tactics that are equivalent to the conditions of an arrest. So, a person may not be subjected to custodial interrogation based on only a reasonable suspicion, or less than probable cause. *Florida v. Royer,* 460 U.S. 491, 499, 103 S.Ct. 1319, 1324, 75 L.Ed. 2d 229 (1983).

Given the totality of the circumstances in this case, I conclude that the police officer did have a reasonable suspicion that would justify a limited, temporary detention of the appellant. Although the polygraph test was not admissible as evidence at trial, it was a fact that the officer could consider in forming his suspicion that the appellant had engaged in criminal activity. Officer LeMoine also had the offense report for the theft and testified that several of the appellant's statements of events were inconsistent with that report, which also made him suspicious. LeMoine admitted that without the appellant's confession, no case could be filed against the appellant.

However, as discussed above, LeMoine's questioning of the appellant after the polygraph test was the substantial equivalent of custodial interrogation, and thus required more than mere suspicion to be legal. Unlike the majority, I do not consider the circumstances as a whole to justify more than mere suspicion, or to be enough to constitute probable cause, i.e., to warrant a man of reasonable caution to believe that appellant had committed the crime. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Without probable cause, the custodial interrogation of the appellant was illegal, and the State had the burden of proving that the confession was not the fruit of the illegal detention. Relevant factors to be considered in determining whether this burden was met include: whether *Miranda* warnings were given, the presence of any intervening circumstances, and the purpose and flagrancy of official misconduct. *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975).

There is ample evidence that *Miranda* warnings were given to appellant, and he initialed that he understood these warnings. However, the confession was signed less than two hours after appellant was confronted by the police officer with the fact that he had failed the polygraph exam,

and after almost continuous questioning by police.

I find little or no evidence of intervening circumstances. Appellant was allowed to call his mother; however, appellant testified .that he asked his mother to try to reach an attorney for him and that she told him not to say anything else or to sign anything. These calls can thus not be considered an intervening event that caused appellant to confess apart from the fact of his illegal detention and questioning.

The sole purpose of the police questioning was clearly to get an incriminating statement from the appellant, and the officer admitted that there was no case against appellant unless he confessed.

In view of these factors, I conclude that the confession in this case was the result of the illegal detention, and its admission at trial violated appellant's fourth amendment rights. I would sustain appellant's sole point of error and reverse the judgment of the trial court and remand the case for a new trial.