**Fred Michael ROTHSTEIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 14–07–00629–CR, 14–07–00634–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 31, 2008.

Rehearing Overruled Sept. 11, 2008.

Discretionary Review Refused Jan. 14, 2009.

---

**4.** All pending motions are herein denied as moot.

Don Ervin, Houston, TX, for appellants.

Eric Kugler, Houston, TX, for State.

Panel consists of Justice YATES, ANDERSON, and BROWN.

## OPINION

JOHN S. ANDERSON, Justice.

Following the denial of his pre-trial motion to suppress, appellant, Fred Michael Rothstein, pled guilty to (1) possession with intent to deliver more than four grams but less than four hundred grams of psilocybin; and (2) possession of less than twenty abuse units of lysergic acid diethylamide ("LSD").[1] Tex. Health & Safety Code Ann. §§ 481.113, 481.1151 (Vernon 2003). In this consolidated appeal, appellant, in a single issue, appeals the trial court's denial of his motion to suppress. Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Two witnesses testified during the suppression hearing. Deputy Bryan Barriere of the Harris County Sheriff's Department was the first witness to testify, followed by Deputy Carlton Horton.

According to Deputy Barriere, on the morning of January 26, 2007, he was dispatched to a burglary in progress at the house located at 14950 Camino Rancho Road. Deputy Barriere testified the sheriff's office had received a call from an unknown person reporting a burglary in progress. Deputy Barriere was the second deputy on the scene. After the deputies determined the front door was locked, they discovered the back door to the house had been kicked in. Once sufficient deputies arrived to watch the front of the residence and conduct a search for the burglars, Deputies Barriere, Carrillo, and Quiroz entered the house through the back door. Deputy Barriere testified he left the house after initially entering to get a flashlight out of his car and then reentered the house to continue the search.

Deputy Barriere testified that, upon entering the house, the deputies saw parts of the house in disarray; some of the drawers were pulled out, and some of the cabinets were opened. The deputies noticed, in plain view, marijuana in several different locations, a small scale, small plastic baggies, and grinders used to grind marijuana. The deputies searched the house for the burglary suspects, but they did not search any place where a suspect was unlikely to be found. After verifying there were no suspects in the house, the deputies left the house. According to Deputy Barriere, the search lasted about fifteen to twenty minutes and the only contraband found in plain sight was the marijuana and associated paraphernalia.

After completing the search, the deputies asked Deputy Horton, the deputy in charge of the scene, to enter the house to view the marijuana. According to Deputy Barriere, after showing Deputy Horton the marijuana, the deputies left the house. While the deputies were standing in the backyard, Deputy Horton informed the deputies he was leaving to obtain a search warrant. Deputy Barriere testified he did not re-enter the house, and he left after approximately one hour on the scene. Finally, Deputy Barriere testified he did not see any of the other deputies re-enter the house prior to his departure and has no knowledge whether they did so after he left the scene.

1. The possession with intent to deliver more than four grams but less than four hundred grams of psilocybin conviction was in trial court cause number 1101878 and is being appealed in cause number 14–07–00629–CR.

The possession of less than twenty abuse units of LSD conviction was in trial court cause number 1113688 and is being appealed in cause number 14–07–00634–CR.

Deputy Horton testified next. According to Deputy Horton, he was dispatched to the house for a burglary in progress. Deputy Horton also testified neighbors told the deputies they had seen two people exiting the back of the house. The record is unclear when the neighbors passed this information along to the deputies. Deputy Horton arrived after the other deputies, and he watched the front of the house while the other deputies entered the house to search for burglary suspects. Deputy Horton testified he did not enter the house until after the other deputies told him it was clear and asked him to see what had been discovered inside the house. Deputy Horton then entered the house through the back door and saw the marijuana and paraphernalia. Deputy Horton testified he did not conduct any type of search when he entered the house, but only viewed the contraband that was in plain sight in the bathroom and family room.

Deputy Horton then testified he called his supervisor who instructed him to stop all activity inside the house, post a deputy to watch the house, and go get a search warrant immediately. While in the process of obtaining the search warrant, Deputy Quiroz, who had remained to watch the house, called Deputy Horton and informed him and the district attorney assisting Deputy Horton that appellant had arrived at the house. The district attorney instructed Deputy Quiroz to take appellant into custody. Deputy Horton testified once he obtained the search warrant, he returned to the house and conducted a thorough search. During that search, in addition to marijuana and marijuana paraphernalia, the deputies found and seized multiple plastic bags, white powdery substances, LSD stamps, and mushroom-type substances. They also searched appellant's car and found cash, additional mushroom-type substances, and marijuana.

Under cross-examination, Deputy Horton testified he probably entered the house twice before ordering the deputies out. Also, Deputy Horton testified he did not put on latex gloves until after he returned to the house with the search warrant. Deputy Horton testified he did see a surveillance camera mounted on the exterior wall of the house by the back door. At that point, appellant revealed the existence of a motion-activated surveillance video.[2] The recording showed some unidentified persons, presumably the burglars, moving back and forth in front of the surveillance camera and then, some time later, Deputy Carrillo moving past. The video also showed deputies moving back and forth multiple times prior to Deputy Horton obtaining the search warrant. It also showed deputies, including Deputy Horton, possibly wearing latex gloves prior to his return with the search warrant. After viewing the recording, Deputy Horton said his previous testimony was incorrect and that he put gloves on for officer safety prior to obtaining the search warrant. Deputy Horton also agreed the surveillance video showed him enter and exit the house while talking on the phone several times prior to his leaving to obtain the search warrant. The video also showed a person Deputy Horton identified as a burglary investigator, carrying a camera bag, move past the surveillance camera prior to Deputy Horton departing to obtain a search warrant. Finally, Deputy Horton testified he did not physically search anything in the house prior to obtaining the search warrant and that the deputies found the mushrooms, LSD, and other

---

2. There was no evidence admitted during the suppression hearing specifying the location of the camera taking the motion-activated video.

items not related to marijuana only after he returned with the search warrant.

Appellant does not dispute the assertion that the deputies seized none of the contraband until after Deputy Horton returned with the search warrant.

At the close of the evidence, appellant argued the trial court should grant appellant's motion to suppress because the only issue was the deputies' credibility or believability which, in appellant's view, the surveillance video called into doubt. The trial court denied appellant's motion. Appellant then pled guilty to both charges and the trial court assessed appellant's punishment at six months' confinement in state jail for the LSD offense and eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice for the psilocybin offense. This appeal followed.

## Discussion

In a single issue on appeal, appellant contends the trial court abused its discretion when it denied his motion to suppress because the police violated his rights under both the Fourth Amendment to the United States Constitution and Article I, Section 9, of the Texas Constitution when they searched his residence.[3] U.S. CONST. amend. IV; Tex. Const. art. I, § 9. Within his single issue, appellant makes four separate arguments in support of his contention the trial court abused its discretion when it denied his motion to suppress: (1) Deputy Horton's entry into appellant's residence was not justified by the exigent-circumstances exception; (2) there was in-

sufficient information available to the deputies to justify a curtilage search of appellant's residence; (3) the deputies continued to search after the exigent circumstances had ended and before they obtained a search warrant; and (4) the scope of the search expanded after all exigencies had terminated.[4]

## I. The Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's findings of historical fact supported by the record and reviewing *de novo* the trial court's application of the law of search and seizure. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The trial judge is the exclusive trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). As the trier of fact, the trial court is free to believe or disbelieve all or any part of a witness's testimony, even if the testimony is uncontroverted. *Id.; Marsh v. State*, 140 S.W.3d 901, 905 (Tex.App.–Houston [14th Dist.] 2004, pet. ref'd). In reviewing a trial court's ruling on a motion to suppress, an appellate court must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App.2006). When the trial court fails to make explicit findings of fact, we imply fact findings that

---

**3.** Because appellant has not provided any explanation or authority for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, we will not separately address his state constitutional argument. *See Black v. State*, 26 S.W.3d 895, 896 n. 4 (Tex.Crim. App.2000).

**4.** Because appellant's third and fourth contentions raise the same argument, that the deputies conducted a full search of appellant's residence after the exigencies had terminated and before acquiring a search warrant, we will address them together.

support the trial court's ruling so long as the evidence supports these implied findings. *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex.Crim.App.2007). If the trial court's ruling is reasonably supported by the record and is correct under any theory of the law applicable to the case, the reviewing court will sustain it upon review. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996).

## II. Warrantless Searches

The Fourth Amendment grants individuals "the right ... to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Gutierrez*, 221 S.W.3d at 684–85 (quoting U.S. CONST. amend. IV). A search conducted without a warrant issued upon probable cause is *per se* unreasonable, subject only to a few specifically established and well-delineated exceptions. *Duhig v. State*, 171 S.W.3d 631, 635 (Tex. App.–Houston [14th Dist.] 2005, pet. ref'd). In fact, the search of a residence without a judicially authorized warrant is presumptively unreasonable. *Gutierrez*, 221 S.W.3d at 685. This does not mean all searches must be conducted under the authority of a warrant. *Id.* However, the warrant requirement is not lightly set aside, and the State shoulders the burden to prove an exception to the warrant requirement applies. *Id.*

A variety of situations may place a police officer in circumstances in which a warrantless entry is viewed as reasonable. *McNairy v. State*, 835 S.W.2d 101, 107 (Tex.Crim.App.1991). One justification for a warrantless search requires the State to show the police officer had probable cause at the time the search was made, and there were exigent circumstances that made it impractical to procure a warrant. *Id.* at 106. This exigent circumstances exception applies when the po-

lice are acting in their crime-fighting role. *Laney v. State*, 117 S.W.3d 854, 861 (Tex. Crim.App.2003). Exigent circumstances are circumstances which justify the immediate need to enter a residence without first obtaining a warrant. *Parker v. State*, 206 S.W.3d 593, 597 (Tex.Crim.App.2006). To validate a warrantless search based on exigent circumstances, the State must satisfy a two-step process. *Gutierrez*, 221 S.W.3d at 685. First, there must be probable cause to enter or search a specific location. *Id.* In the context of warrantless searches, probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe the instrumentality or evidence of a crime will be found. *Id.* Second, an exigency that requires an immediate entry to a particular place without a warrant must exist. *Id.* There are three categories of exigent circumstances that justify a warrantless intrusion by police officers: (1) providing aid or assistance to persons whom law-enforcement officers reasonably believe are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband. *Id.* If the State does not adequately establish both probable cause and exigent circumstances, then a warrantless entry will not withstand judicial scrutiny. *Id.* The same facts which give rise to probable cause may also be relevant to an analysis of exigent circumstances. *See Parker*, 206 S.W.3d at 600–01.

## III. Did Appellant Waive His Arguments On Appeal?

Before addressing the merits of appellant's appeal, we must address the State's contention appellant waived several of his

arguments on appeal because they do not comport with appellant's arguments to the trial court in his motion to suppress. Specifically, the State contends appellant's only arguments to the trial court in support of his motion to suppress were (1) Deputy Horton was not credible or believable and (2) Deputy Horton conducted a detailed search of the house prior to obtaining a search warrant. The State then asserts any arguments on appeal by appellant beyond these have been waived. In response, appellant argues his broad motion to suppress is sufficient to preserve error for each of the specific arguments he raises on appeal. We agree in part with the State and hold appellant has waived appellate review of his contention on appeal that Deputy Horton's initial entry into his residence was constitutionally improper because the exigent circumstance had ended once the deputies determined no burglars were inside the residence.

## A. Preservation of Error

■■■■ A motion to suppress is nothing more than a specialized objection to the admissibility of evidence. *Galitz v. State,* 617 S.W.2d 949, 952 n. 10 (Tex.Crim. App.1981). To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. Tex. R.App. P. 33.1(a). A defendant's appellate contention must comport with the specific objection made at trial. *Wilson v. State,* 71 S.W.3d 346, 349 (Tex.Crim.App.2002). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Broxton v. State,* 909 S.W.2d 912, 918 (Tex.Crim.App.1995). A reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention. *Id.*

## B. Appellant Failed to Preserve Error on His Challenge to Deputy Horton's Initial Entry

■■■■ In his motion to suppress, which his trial counsel admitted was "generic," appellant argued only that the trial court should suppress the drugs at issue in this appeal because the deputies searched his home and vehicle "without a warrant, without probable cause or consent and where the warrant was secured by the taint of the initial illegal, warrantless, nonconsensual entry into [appellant's] home." (CR00009) Later in the motion, appellant argued the "search and seizure of evidence from [appellant's] residence was without probable cause or reasonable suspicion." (CR00019) Finally, appellant asserted "the stop, arrest and search of [appellant] and the search of the vehicle and [appellant's] residence was without a valid warrant and without any valid authority or consent of [appellant] whatsoever." During the suppression hearing, appellant argued the trial court should grant his motion to suppress because (1) the deputies were not credible or believable and (2) the deputies conducted a full search of appellant's house prior to obtaining a search warrant. On appeal, appellant also contends Deputy Horton's initial entry into his house was constitutionally improper even if he did not conduct a search, because the exigent circumstance ended when the deputies determined no burglars were inside appellant's residence. Appellant's generic motion to suppress was not specific enough to preserve this argument for appellate review. *See Swain v. State,* 181 S.W.3d 359, 365 (Tex.Crim.App.2005). In addition, appellant's argument at the suppression hearing did not address this contention. Because appellant's argument on appeal does not comport with any objection raised in the motion to suppress or at the suppression hearing, appellant has failed to preserve

error on this issue. Tex.R.App. P. 33.1(a).[5]

## IV. Did the Deputies Conduct an Unconstitutional Search of the Curtilage of Appellant's Residence?

Appellant contends the deputies lacked probable cause to conduct a curtilage search of appellant's residence. Because, under the circumstances present in this case, the deputies were permitted to approach appellant's back door, we disagree there was an unconstitutional search of the curtilage of appellant's residence.

"Curtilage" is the land immediately surrounding and associated with the home. *Duhig*, 171 S.W.3d at 637. The Fourth Amendment protections extend to the curtilage of a home. *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984); *Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex.Crim.App. 1979).

Absent express orders from a person in possession of property not to trespass, anyone, including a law-enforcement officer, has the right to approach the front door of a residence and knock on the door. *Duhig*, 171 S.W.3d at 635. In addition, it is permissible for police officers to approach the back door of a house to contact the residents after they have first tried the front door and received no answer. *Id.* at 637. Therefore, because the evidence at the suppression hearing established the deputies initially tried, and failed, to contact the residents of the home by way of the front door, they were per-

mitted to approach the back door.[6] *See id.* Once the deputies approached the back door, they saw the back door had been kicked in. This undisputed fact, in conjunction with the call to police reporting a burglary in progress, provided the deputies both the probable cause and exigent circumstance needed to enter appellant's residence without a warrant so they could determine if burglars were still inside or if there were victims needing assistance. *See Barocio v. State*, 158 S.W.3d 498, 500 (Tex.Crim.App.2005) (holding the possibility a burglary is in progress or has been recently committed may provide police officers with exigent circumstances to justify a warrantless entry). We overrule appellant's contention on appeal that the deputies conducted an unconstitutional search of the curtilage of his residence.

## V. Did the Deputies Conduct a Full Search of Appellant's Residence Before They Obtained a Search Warrant?

Here, appellant contends the deputies conducted a full search of his residence prior to obtaining a search warrant. In support of this contention, appellant places great importance on Deputy Horton's testimony that he entered the residence twice and was also pacing back and forth through the back door while talking to his supervisor on his cellular telephone, as well as the images and elapsed time readings from the surveillance video. Appellant then argues "the unavoidable rational inference from this evidence is that the search for evidence began after all

---

5. We determine appellant adequately preserved error on his remaining appellate arguments. First, appellant contends the deputies possessed insufficient information to justify a curtilage search of appellant's residence. Because a warrantless search of the curtilage of a residence requires probable cause, appellant preserved this issue for appellate review when he specifically raised the lack of proba-

ble cause as a basis for his motion to suppress. *Pool v. State*, 157 S.W.3d 36, 42 (Tex. App.–Waco 2004, no pet.). Finally, appellant specifically raised his remaining points on appeal during the suppression hearing.

6. We note there was no evidence in the record the back yard was enclosed by a fence.

exigencies had terminated." We disagree that, when viewed through the appropriate standard of review, as we must, the number of times the deputies crossed appellant's threshold makes this inference unavoidable.

At the suppression hearing, only two witnesses testified: Deputies Barriere and Horton. Deputy Barriere testified he entered appellant's house two times. The first time he entered along with Deputies Quiroz and Carrillo. He then testified he left the house to get his flashlight out of his patrol car and re-entered the house. Deputy Barriere testified this search for burglary suspects was brief and they only examined areas in the house where a person could be concealed. Deputy Barriere then testified once the deputies had verified there were no burglars inside, he showed Deputy Horton, the deputy in charge of the scene, the marijuana and paraphernalia they had found in plain view inside the house. Deputy Barriere testified the deputies did not conduct a full search of the house, and he did not re-enter the house after showing Deputy Horton the marijuana. Finally, Deputy Barriere testified he did not see any other deputy re-enter the house prior to his departure from the scene approximately one hour after his arrival.

Deputy Horton testified he entered appellant's house when asked to do so by the deputies. Deputy Horton testified he saw the marijuana and paraphernalia in various locations in plain view. Deputy Horton denied he conducted any search of appellant's house prior to obtaining a search warrant. Deputy Horton admitted he entered the house more than once, including pacing back and forth through the back door while talking to his supervisor. In addition, Deputy Horton admitted he may have been wearing latex gloves during his initial entry into the house, despite his original testimony that he did not.

In *Johnson v. State*, the defendant argued multiple entries into her residence in response to a 9–1–1 call about a possible murder were improper because the exigency had ended. *See Johnson v. State*, 226 S.W.3d 439, 445 (Tex.Crim.App.2007). However, the Court of Criminal Appeals held: "the lawfulness of a search is not determined by the number of times that officers cross the threshold. Rather, it is whether the officers are engaged in objectively reasonable conduct under the circumstances." *Id.* In this case, there is simply no testimonial evidence that, prior to obtaining a search warrant, the deputies on the scene conducted anything more than a quick search of appellant's house to locate any burglars that might be present. The surveillance video, lasting significantly less than a minute, does not show any deputy conducting a search, instead, it only shows images of deputies moving back and forth in front of the camera. There was no testimony specifying the location of the video camera. In addition, appellant admitted the actual time of day reading on the surveillance video was not accurate and offered no evidence to establish the accuracy of appellant's calculation of the elapsed time. The trial court, as the trier of fact, was permitted to take all of these items into consideration when evaluating the evidence.

Here, the trial court heard the testimony of Deputies Barriere and Horton, viewed the surveillance video, and still concluded the deputies did not conduct an improper search of appellant's residence. Based on the evidence in the record, we conclude the trial court could reasonably have found the deputies' conduct was reasonable under the circumstances and that Deputy Horton's actions prior to obtaining the search warrant were incidental to and

a valid continuation of the initial exigent circumstances search by Deputies Barriere, Quiroz, and Carrillo. *See Shoaf v. State,* 706 S.W.2d 170, 175 (Tex.App.–Fort Worth 1986, pet. ref'd) (holding the entry of detectives into residence after exigency had ended was constitutionally acceptable because it was in the course of pursuing an administrative duty to tag, pick up, and preserve evidence seen by original officer during exigent search of premises). We hold the trial court did not abuse its discretion when it determined the deputies conducted a constitutional exigent-circumstances search of appellant's residence.[7] Therefore, we overrule appellant's contentions on appeal that the deputies improperly searched his residence prior to obtaining a search warrant.

### CONCLUSION

Having overruled each sub-issue raised in appellant's single issue on appeal, we hold the trial court did not abuse its discretion when it denied appellant's motion to suppress.

Accordingly, we overrule appellant's issue on appeal and affirm the judgment of the trial court.

---

7. Because an appellant cannot raise a new issue in a reply brief, we need not address appellant's argument, raised in his reply brief, that Deputy Horton's search warrant affidavit was inadequate. Tex.R.App. P. 38.3.