**Opinion issued February 5, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-01055-CR

———————————

**NICHOLAS VICKERY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 11**
**Harris County, Texas**
**Trial Court Case No. 1872356**

---

## MEMORANDUM OPINION

Appellant Nicholas Vickery was convicted of the misdemeanor offense of driving while intoxicated and the trial court assessed his punishment at one year in county jail, but suspended the sentence and placed appellant on community supervision for one year. On appeal, appellant contends that the trial court abused

its discretion by denying his motion to suppress because (1) Begley, a private citizen, did not have probable cause to arrest appellant or detain him until law enforcement arrived, and (2) Officer Nolan did not have probable cause to arrest him. We affirm.

**Background**

R. Begley, a licensed private investigator and private security guard, was working security for an apartment complex on January 11, 2013.  Begley and his partner were parked on the complex's periphery in their marked patrol vehicle when Begley observed appellant driving his truck on a nearby street at approximately 12:30 a.m. According to Begley, appellant was swerving back and forth and "was driving at a higher than normal speed and what appeared to us as reckless." Begley watched as appellant entered the complex and parked his truck in the parking lot.

Based on his observations, Begley decided to approach appellant in order to "identify him and find out his reason for being on the property." Appellant told Begley that he and his passenger were visiting someone at the complex, but he could not identify who they were visiting.[1] As he was questioning appellant, Begley noticed that appellant's eyes were bloodshot and that appellant was slurring his speech and was "really incoherent." Based on his observations, Begley believed

---

[1]     Appellant's passenger was given a criminal trespass warning by Begley's partner.

2

"something was wrong" with appellant who, according to Begley, "appeared to be either under the influence of something or real disoriented."

Begley then asked appellant for his driver's license and appellant provided it. At that point, Begley asked appellant to wait in his truck while Begley returned to his vehicle in order to enter appellant's information into the apartment complex's computer database. Begley's partner called the police and he and Begley stayed with appellant until police officers arrived.

HPD officers Nolan and Montavo arrived at the apartment complex shortly thereafter. Officer Nolan spoke to the security guards, who told her that appellant had swerved while driving into the parking lot. As she approached appellant, who was seated in his truck, Officer Nolan detected a strong odor of alcohol. She also noticed that appellant's eyes were red and glassy and that his speech was slurred. In response to the officer's questions, appellant admitted that he had been drinking alcoholic beverages that night. According to Officer Nolan, appellant stumbled when he exited his truck and was unable to "maintain his posture."

Officer Nolan suspected that appellant was intoxicated, but she was not comfortable administering field sobriety tests to appellant at the scene and decided to transport him to "central intox" so that a member of HPD's DWI task force could administer the tests. She handcuffed appellant and placed him in the backseat of her patrol car in accordance with HPD policy. When they arrived at central

intox, Officer Ibarra, a member of HPD's DWI task force, administered the tests to appellant. According to Officer Ibarra, appellant exhibited all six of the clues of intoxication on the HGN test, scored two of four potential clues on the one-leg-stand test, and exhibited five of the eight possible clues on the walk-and-turn test. Appellant also provided a breath sample for testing purposes, which yielded a result of a 0.129 blood alcohol concentration. By means of extrapolation, it was determined that appellant had a blood alcohol concentration of approximately 0.149 when he drove into the apartment complex.

The State called Begley as its first witness at trial. During Begley's direct examination, appellant's counsel raised an oral motion to suppress,[2] stating, "At this point, the defense is going [to] object pursuant [to] the Fourth Amendment of the United States Constitution, Article 38[.]23, Texas Code of Criminal Procedure on Article I, Section 9 of the Texas Constitution on the grounds that this is an unlawful detention of [appellant]." The jury was removed from the courtroom and the trial court conducted a suppression hearing on appellant's oral objection. Begley and appellant were the only witnesses to testify during this hearing. While defense counsel was examining Begley early in the hearing, the judge reminded counsel that the hearing was "for the limited purpose of determining whether or not

---

[2]      Appellant did not file a written motion to suppress evidence.

there has been—whether or not the officer had reasonable suspicion to stop and detain" appellant. Defense counsel agreed that he would "confine it to that issue."

During the hearing, Begley testified that appellant appeared to be driving recklessly and above a "normal speed." He also testified that he did not block appellant's truck and that appellant was free to leave at that point. Begley also denied telling appellant to "stay there until the police got there." After defense counsel concluded his questioning of Begley, the State announced:

> Judge, no further [questions]. I don't think that a detention has even been established as to 38[.]23 question. I can ask Mr. Begley questions about why he thought the defendant was engaging in criminal activity, if you would prefer that. But at this point, there's not a detention to detest [sic]. But I'm happy to go on to ask him these questions as to why he felt they should have called the police because of the defendant's actions.

At that point, appellant took the stand for the limited purpose of the suppression hearing. Appellant testified that he had not been speeding, swerving, or driving recklessly. He further testified that Begley pulled in directly behind his truck, blocking him in, and that he was not free to leave at that point. According to appellant, Begley also told him to stay where he was.

Following appellant's testimony, that State informed the trial court that "[t]here are facts as well that Mr. Begley can testify as to the reasons why he conducted the stop. I don't want to waste the Court's time by getting into that by recalling him." At that point, the trial court indicated that, in light of appellant's

testimony, it would not be a waste of the court's time for the State to recall Begley for purposes of "determin[ing] whether or not he had a basis to detain [appellant] and if he did so."

Begley returned to the stand and testified about the apartment complex's curfew and his efforts to question appellant about his purpose for visiting the complex. Begley also stated that he saw appellant driving and, upon approaching appellant, believed he was intoxicated. After Begley finished testifying, appellant advised the judge that he wanted to call another witness. The judge responded that he had "heard enough," explaining:

> For the limited purpose of this hearing, I don't know what a witness could say that could change this ruling. I find that had Mr. Begley had said, first of all, the defendant was not detained but if he were detained, he certainly had reasonable suspicion to reasonably detain him until law enforcement arrived. So I don't know what other—how any additional witness that you have would change that ruling.

Defense counsel did not call another witness and, instead, argued in support of the suppression motion:

> Based on the record, the defense objects to the detention of [appellant] pursuant to everything I stated earlier in the Fourth Amendment, 38[.]23 Article, Section 9. Mr. Begley testified that he was going at an excessive speed, without telling the Court that he was speeding. That is an allegation without any specific articulable facts to support. Not a violation of the law.
>
> Furthermore, the security guard testified that he was swerving. That is also an articulable fact that didn't have—that the allegations doesn't have any facts to support that conclusion. And neither of those

allegation are violations of the law. And we would object to the detention of [appellant] based on that.

The State responded, arguing:

> The question is whether detention—if there was a detention, whether it was reasonable given the circumstances from an objective officer standpoint. There was information to believe that at least a reasonable officer would believe in those circumstances that [appellant] was intoxicated and he was driving. Also, [appellant's passenger] was given a criminal trespass warning. There's two law violations that would have been reasonable for Mr. Begley to detain the defendant and the person with him until police officers could arrive.

After considering the testimony and the arguments of counsel, the court overruled appellant's motion and the trial resumed.

Appellant again raised his suppression motion at the conclusion of Officer Nolan's trial testimony. While cross-examining Officer Nolan, defense counsel specifically asked whether appellant was under arrest when the officer handcuffed him, placed him in the backseat of her patrol car, and transported him to central intox, and whether she had probable cause to do so. The following exchange between Officer Nolan and defense counsel occurred:

Q.     [After questioning appellant], you decided that you wanted to take [him] down to the police station?

A.     I decided that I had reasonable suspicion to take him down to intox.

Q.     Reasonable suspicion, but not probable cause?

A.     Absolutely.

Q. Okay. So then what you did is you were a police officer that was in uniform like you are today?

A. Yes, sir.

Q. And you had taken your handcuffs out?

A. Yes, sir.

Q. And then you put your handcuffs on him?

A. Yes, sir.

Q. And then you put [appellant] in the back of your police car?

A. Yes, sir.

. . . .

Q. Okay. And so at this point in time, based on reasonable suspicion, [appellant] is put in handcuffs, put in the back of a police car, and then he is transported to the police station?

A. He's transported to central intox, yes.

. . . .

Q. When he's in the back of your police car, he's in handcuffs. He's under arrest at that point in time?

A. No.

Q. Okay. Well he's not free to leave?

A. No. He's not free to leave.

Q. He's in handcuffs?

A. He is in handcuffs, yes.

. . . .

Q. [Y]ou felt like you had reasonable suspicion that hadn't risen to the level of probable cause to arrest?

A. Correct.

At that point, defense counsel immediately re-urged his motion to suppress, which was based in part on Fourth Amendment grounds, by stating, "Just at this point in time on our Motion to Suppress." The court replied, "It hasn't changed. It's denied. You may proceed."[3]

At the close of the guilt phase of the trial, the jurors were instructed, pursuant to Article 38.23[4] of the Texas Code of Criminal Procedure, that if they believed that Begley "did not have a reasonable suspicion based on articulable facts to believe that [appellant] committed some offense against the laws of the State of Texas, or if [they] have a reasonable doubt thereof," they must "wholly disregard all evidence obtained as a result of the stop" and find appellant not guilty. The charge defined "reasonable suspicion" as "a suspicion that would be held by an ordinary and prudent person in the same circumstances as the officer or other person."

---

[3] Appellant made two other briefs references to his motion to suppress, but neither of those events impacts our analysis.

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005) (prohibiting admission of evidence obtained in violation of Constitution or laws of United States or Texas in criminal cases).

**Standard of Review and Applicable Law**

A motion to suppress is a specialized objection to the admission of evidence. *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Id.*; *see also Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the trial court's ruling and afford almost total deference to a trial court's express or implied determination of historical facts. *See Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007).

"[A] complaint is not preserved for appeal unless it was made to the trial court 'by a timely request, objection or motion' that 'stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.'" *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (quoting TEX. R. APP. P. 33.1(a)); TEX. R. EVID. 103 (stating error may not be predicated upon ruling which admits or excludes evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the

10

context."). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial [court] of the basis of the objection and give [it] the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez*, 306 S.W.3d at 312. To preserve error, a party "must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Id.* at 313 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). A party fails to preserve error when the contention urged on appeal does not comport with the specific complaint made in the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Rothstein*, 267 S.W.3d at 373. A reviewing court will not consider errors, even of constitutional magnitude, not called to the trial court's attention. *Id.*

We consider the context of the complaint to determine if the party preserved error. *Resendez*, 306 S.W.3d at 313. If the correct ground for exclusion was obvious to the trial court and opposing counsel, waiver will not result from a general or imprecise objection. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). However, if the context shows that a party failed to effectively communicate his argument, then the error is deemed waived on appeal. *Lankston*, 827 S.W.2d at 909.

**Discussion**

**A.    Did Begley Have Probable Cause to Arrest Appellant?**

In his first issue, appellant argues that Begley's initial detention of him in the parking lot amounted to an improper citizen's arrest that was not supported by probable cause. Specifically, appellant contends that because Begley is not a police officer, he was not authorized to conduct an investigative detention,[5] and was only authorized to perform a citizen's arrest pursuant to Article 14.01(a) of the Code of Criminal Procedure.[6] TEX. CODE CRIM. PROC. ANN. art. 14.01(a) (West 2005). Appellant further contends that the trial court erred in denying his motion to suppress because Article 14.01(a) only authorizes a private citizen to perform an arrest when a felony or breach of the peace is committed in his presence or within his view, and that no objective evidence was adduced at trial to support a finding that Begley observed appellant committing a felony offense or a breach of the peace. The State contends that appellant has not preserved this issue for our review because his appellate complaint does not comport with the specific complaint he made in the trial court.

---

[5]    "An officer may conduct a brief investigative detention, or '*Terry* stop,' when he has a reasonable suspicion to believe that an individual is involved in criminal activity." *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968)).

[6]    Article 14.01(a) provides: "A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace." TEX. CODE CRIM. PROC. ANN. art. 14.01(a) (West 2005).

A careful examination of the appellate record reveals that the trial court never considered whether Begley had *probable cause* to perform a citizen's *arrest*. Indeed, the record reflects that, from the outset of the suppression hearing until the jury charge, the trial court understood appellant's complaint to be focused exclusively upon whether Begley had *reasonable suspicion* to *detain* him. More importantly, it is apparent from the record that neither the trial court nor the State understood that appellant was actually challenging Begley's detention of him as an improper citizen's arrest pursuant to Article 14.01(a)—which would require a finding that Begley had probable cause to believe that appellant committed either a felony or a breach of the peace in Begley's presence or view—as opposed to an investigative detention which only requires a finding that Begley had a reasonable suspicion that appellant was involved in criminal activity of any sort. *See Zillender*, 557 S.W.2d at 517 (stating waiver will not result from general or imprecise objection so long as correct ground for exclusion was obvious to trial court and opposing counsel).

The oral motion to suppress, the arguments of counsel during the suppression hearing, the trial court's comments regarding the scope of the hearing, and the jury charge's Article 38.23 instruction are focused solely upon the question of whether Begley had reasonable suspicion to detain appellant. There is no mention of "probable cause," which is a different, more demanding legal standard.

13

*See, e.g.*, *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990) ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause."). Accordingly, we hold that appellant has not preserved this issue for our review. *See Resendez*, 306 S.W.3d at 316–17 (holding suppression argument was not preserved for appellate review because record reflected that defendant did not raise argument in trial court and neither trial judge nor State understood that defendant was raising argument); *see also Lovill*, 319 S.W.3d at 691–92 (stating complaint not preserved for appellate review if legal basis of appellate complaint varies from complaint raised at trial).

We overrule appellant's first issue.

**B.     Did Officer Nolan Have Probable Cause to Arrest Appellant?**

In his second issue, appellant argues that the trial court abused its discretion by denying his motion to suppress because Officer Nolan did not have probable cause to arrest him. Specifically, appellant contends that Begley's initial detention of him escalated into an unlawful arrest when Officer Nolan handcuffed him, placed him in the back seat of her patrol car, and transported him to central intox, and that Officer Nolan did not have probable cause to believe that he had

committed the offense of DWI or any other criminal offense at that time. The State contends that appellant has not preserved this issue and that, even if appellant had preserved his complaint for our review, he would still not be entitled to relief because the record demonstrates that the officer had probable cause to arrest appellant when she transported him to central intox in her patrol car.

Although appellant did not expressly argue to the trial court that Officer Nolan arrested him when she handcuffed him, placed him in the back seat of her patrol car, and transported him to central intox, and that this arrest was unsupported by probable cause, the record reflects that appellant questioned Officer Nolan extensively about this issue during trial and then immediately re-urged his motion to suppress. The trial court denied the motion, without hearing any further argument from the parties. Under the circumstances, we conclude that this was sufficient to preserve the error for our review. *See Resendez*, 306 S.W.3d at 313 (stating appellate courts consider context of complaint to determine if party preserved error); *see also State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013) (although defendant's challenge "could have been more clearly presented," "magic language" was not required).

Appellant argues that Officer Nolan "arrested" him when she handcuffed him, placed him in the back seat of a police car, and transported him to central intox. However, even assuming—without deciding—that appellant is correct, he is

still not entitled to relief because the record reflects that Officer Nolan had probable cause to arrest him for DWI.

The Fourth Amendment to the United States Constitution, which is made applicable to the states by the Due Process Clause of the Fourteenth Amendment, guarantees that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." U.S. CONST. AMENDS. IV, XIV; *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). The Fourth Amendment requires that an officer have probable cause to effectuate a warrantless arrest. *Amador*, 275 S.W.3d at 878. "Probable cause exists where police have reasonably trustworthy information sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense." *McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003). The test for probable cause is objective, "unrelated to the subjective beliefs of the arresting officer," and "it requires a consideration of the totality of the circumstances facing the arresting officer." *Amador*, 275 S.W.3d at 878.

Officer Nolan testified that she was dispatched to the scene to investigate an individual who may have been "driving intoxicated on a public road," and that when she arrived the security guards told her that appellant swerved while driving into the parking lot. She also testified that when she questioned appellant she detected a strong odor of alcohol, and noticed that his eyes were red and glassy,

16

and that he was slurring his words. She also testified that appellant told her that he had been drinking and driving that night and that he stumbled when he exited his truck and was "unable to maintain his posture." The odor of alcohol, watery eyes, and unsteadiness are all classic signs that suggest impairment of a suspect's mental and physical faculties. *See Markey v. State*, 996 S.W.2d 226, 230 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Although Officer Nolan testified that she did not believe that she had probable cause to arrest appellant, her subjective belief is not dispositive of this issue. *See Amador*, 275 S.W.3d at 878 (stating that whether probable cause to arrest exists is objective determination "unrelated to the subjective beliefs of the arresting officer"). It is well established that the subjective conclusion of a police officer concerning the existence of probable cause is not binding on the reviewing court, which must independently scrutinize the objective facts to determine the existence of probable cause. *Voelkel v. State*, 717 S.W.2d 314, 316 (Tex. Crim. App. 1986); *Johnson v. State*, 751 S.W.2d 926, 929 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). Based on the totality of the evidence presented, including the objective facts included in the record, we conclude that the signs of intoxication observed by Officer Nolan were sufficient to establish probable cause to arrest appellant. *See Dyar v. State*, 125 S.W.3d 460, 464 (Tex. Crim. App. 2003) (probable cause to arrest existed where driver admitted drinking and officer smelled alcohol and observed slurred speech, unintelligible answers,

17

and red, glassy eyes); *see also Learning v. State*, 227 S.W.3d 245, 249 (Tex. App.—San Antonio 2007, no pet.) (officer had probable cause to arrest defendant for driving while intoxicated when officer noticed defendant swerving, and defendant emitted strong odor of alcohol and admitted to officer that he had been drinking).

We overrule appellant's second issue.

## Conclusion

We affirm the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Justices Jennings, Massengale, and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).