In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00281-CR**

_____

**HARLAN EUGENE MCNINCH JR.**
**AKA HARLAN MCNINCH**
**AKA HARLAN EUGENE MCNICH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-10-11527 CR**

**MEMORANDUM OPINION**

Harlan Eugene McNinch Jr.[1] appeals from his conviction for unlawful

possession of a firearm by a felon and possession of marijuana. McNinch asserts

that the trial court erred in denying his motion to suppress an oral confession and

instruct the jury on the law of voluntariness. McNinch further argues that the

_____

[1] Harlan Eugene McNinch Jr. is also known as Harlan McNinch and Harlan
Eugene McNich.

1

evidence is legally insufficient to affirmatively link him to the firearm or the marijuana. We affirm the judgment of the trial court.

## I.     BACKGROUND

On the day of the underlying offenses, deputies from the Montgomery County Sheriff's Office were dispatched to a location regarding a disturbance involving a weapon. Officers were told a white male was carrying a gun and had fired shots. When officers arrived at the scene, they observed McNinch standing by a vehicle in front of one of the rent houses on the property. Officers motioned McNinch over to the police car and asked him who had called the police. McNinch instead, volunteered to officers that another male on the property had fired the gun. After speaking with McNinch, officers handcuffed him and placed him in the backseat of the patrol car while they continued their investigation. McNinch was informed that he was not under arrest at that time.

Though McNinch told officers another resident at the property had fired the gun, witnesses on the scene described the gun and reported that it was McNinch who had fired the gun. McNinch denied owning a gun and gave the officers verbal consent to search his house. While searching the house, officers found a baggie of marijuana. Sergeant Scott Altemus removed McNinch from the police car and read him his Miranda warnings. McNinch thereafter acknowledged that he was willing to speak with Altemus. Sergeant Altemus then questioned McNinch about

2

whether he had fired a gun on the property. McNinch initially denied that he had fired a gun. When asked why witnesses would tell police that he had fired a gun, McNinch stated that he had been popping fireworks to scare one of the resident's guests off the property. McNinch also denied any knowledge of the marijuana in his house and told officers it belonged to a friend who stayed with him. Sergeant Altemus placed McNinch back into the police car while officers continued searching for the gun.

About ten minutes later, officers at the scene found a gun matching the description given by the witnesses, in a well-house to the side of McNinch's residence. Sergeant Altemus drove McNinch to the front of the property where the gun was recovered and then Altemus assisted the officers in processing the scene. McNinch remained in the police car. Altemus returned to the police car a few minutes later and continued to question McNinch about the gun. McNinch initially denied that the gun was his and denied any knowledge as to whom it belonged. McNinch asked the officer if he was going to jail and Sergeant Altemus replied that he probably was, but that he was not sure. McNinch then stated, "If I'm not going to jail, then I can . . . speak to y'all in confidentiality." Sergeant Altemus asked McNinch what he meant by that. McNinch replied, "we can step out of the car and step over by that tree and we can talk in confidentiality . . . man to man, not man to officer, not officer to felon or anything like that." Sergeant Altemus said

"alright." When Altemus removed McNinch from the car, McNinch confessed to possessing and firing the gun. He acknowledged he was a convicted felon and stated he knew he was not supposed to have a gun. McNinch was placed back into the police car. When Sergeant Altemus returned to the police car a few minutes later and questioned McNinch further about the marijuana, McNinch also confessed to buying the marijuana and admitted that he had planned to sell it. McNinch confessed approximately twenty-five minutes after Sergeant Altemus read McNinch his Miranda rights.

McNinch was charged with unlawful possession of a firearm by a felon and possession of marijuana. McNinch filed a motion in the trial court in which he argued that his confession should be excluded. On the day of trial, McNinch presented his motion to the trial court and argued that his confession should be suppressed. Following a hearing outside the presence of the jury, the trial court denied McNinch's motion. McNinch was convicted of unlawful possession of a firearm by a felon and possession of marijuana. McNinch was given concurrent sentences of twenty-five years' confinement for unlawful possession of a firearm by a felon and twenty years for possession of marijuana. This appeal followed.

In four issues, McNinch argues the trial court abused its discretion by denying his motion to suppress, erred in failing to instruct the jury regarding the law of voluntariness, and contends the evidence is legally insufficient to establish

4

affirmative links necessary to prove the elements of both possession charges. We affirm the judgment of the trial court.

## II.    VOLUNTARINESS OF CONFESSION

In his first issue, McNinch argues that the trial court erred in denying his motion to suppress his confession because his confession was involuntary due to the coercive tactics, trickery and deception of the detectives, as well as the lapse in time between the provision of his Miranda warnings and his oral confession.

### A. Motion to Suppress the Confession

In his motion to suppress[2] his confession McNinch stated, "[*t*]*he voluntariness of the confession must be first proved to the Court before any allusion thereto is made to the trier of fact*." While McNinch argued that the actions of law enforcement in handcuffing him and placing him in the patrol car rendered any subsequent questioning custodial, he does not complain of any statement made before he was provided his Miranda warnings. In essence, McNinch complains that the officers engaged in unreasonable actions to keep him detained in the backseat of a hot patrol car for thirty minutes before reading him his Miranda warnings and another approximately twenty-five minutes after giving

---

[2] McNinch did not file a written motion to suppress. However, McNinch filed a "Motion in Limine" in which he asked the trial court to exclude his confession. This motion was raised at trial and treated as a motion to suppress evidence. Therefore, we will treat it as such for purposes of this appeal.

the Miranda warnings before the confession was obtained. McNinch contends that because of the oppressive conditions under which he was held, the confession he ultimately provided was rendered involuntary.

Following voir dire, the trial court held a hearing on the motion outside the presence of the jury. The video was admitted for purposes of the hearing. Defense counsel's brief questioning of Sergeant Altemus focused primarily on the time period that elapsed between McNinch being detained, shortly after officers arrived on the scene, and McNinch's confession. At the conclusion of the hearing defense counsel refrained from making any significant argument and stated, "I think the Court has heard the tape and has enough information to make a ruling." Thereafter, the following exchange took place between the trial court and defense counsel concerning the nature of the grounds of the motion to suppress:

> THE COURT: So that I am completely clear, you're asking me to –
>
> [Defense Counsel]: I'm saying he was under arrest as soon as he was handcuffed because he, obviously, was not free to go. I think that's the definition about whether a person is under arrest.
>
> THE COURT: So any statement that he made following that event, after he was Mirandized?
>
> [Defense Counsel]: Yes, Your Honor.
>
> THE COURT: You're saying that did not cure it. All right.

6

The State responded arguing that McNinch was not under arrest when he was initially detained, that he was Mirandized, that he confessed after he was Mirandized, and that the length of time that passed between the time he was Mirandized and the time he confessed was approximately twenty minutes; therefore, the Miranda warnings remained in effect, and that officers are entitled to mislead a suspect to a certain degree during questioning. The trial court made the following oral finding on the record:

> The Court is going to find that the officers responded to a report of a weapon being discharged and find that the defendant was detained for officer safety while there was a preliminary investigation and interviews at the scene.
>
> And I'm going to overrule the motion and deny the request of defendant to suppress the statements of the defendant from the time of the detention through the period following the Miranda warnings.

On appeal, McNinch argues that the trial court erred in denying his motion to suppress his confession because "[t]he detectives engaged in coercive tactics, trickery and deception to induce [McNinch] to confess to ownership and possession of a firearm." In support of his argument, McNinch cites the Due Process Clause and *Miranda v. Arizona*.[3]

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## B. Police Trickery and Deception

A motion to suppress is a specialized objection to the admission of evidence. *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). "[A] complaint is not preserved for appeal unless it was made to the trial court 'by a timely request, objection or motion' that 'stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.'" *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (quoting Tex. R. App. P. 33.1(a)(1)(A)); *see also* Tex. R. Evid. 103(a)(1).

To preserve error, a party "must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Resendez*, 306 S.W.3d at 313 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). Error is not preserved when a party's contention on appeal does not comport with the specific complaint made in the trial court. *Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex. Crim. App. 2009); *see also Rothstein*, 267 S.W.3d at 373.

We consider the context of a complaint in determining whether error was preserved. *Resendez*, 306 S.W.3d at 313. We review appellant's motion to

suppress and the suppression hearing to determine if the complaint was apparent from the context. *See id*. at 314-16; *Rothstein*, 267 S.W.3d at 374-75 n.5. When a ground for exclusion was obvious to the trial court and opposing counsel, waiver will not result from a general or imprecise objection. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). But if the context shows that a party failed to effectively communicate his argument, the error is not preserved for appeal. *Lankston*, 827 S.W.2d at 909.

McNinch concedes on appeal that he understood his rights when Sergeant Altemus read him his Miranda warnings. McNinch contends, however, that the failure to inform him that he was not speaking with Sergeant Altemus "'man to man'" under a cloak of confidentiality and that he was being recorded constitutes police trickery and deception, which rendered the waiver of his *Miranda* rights invalid and violated the Due Process Clause. McNinch failed to preserve this issue for review. *See* Tex. R. App. P. 33.1. McNinch did not raise this argument in the trial court, either in his motion or during the hearing on his written motion. This argument does not comport with the arguments McNinch raised in the trial court. *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (To preserve error for appellate review, "the point of error on appeal must comport with the objection made at trial."); *see also Lugo v. State*, 299 S.W.3d 445, 450 (Tex. App.—Fort

9

Worth 2009, pet. ref'd). Even if McNinch had preserved this issue, his claim would be without merit.

For a confession to be rendered involuntary under the Due Process Clause there must be evidence of police overreaching. *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008). Even if the confession is not the product of a meaningful choice, it is nonetheless voluntary under the Due Process Clause absent coercive police activity. *Id.* at 169-70. Absent police misconduct that is causally related to an accused's confession, there is no basis for concluding that a state actor deprived the accused of due process of law. *Id.* at 170 (quoting *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)). "The Due Process Clause is aimed at protecting suspects from police overreaching, not at protecting people from themselves or other private actors." *Id.* The same principles apply to statements made by an accused during a custodial-interrogation after waiving his *Miranda* rights. *Id.*

Under *Miranda*, an accused who is in custody must be given required warnings prior to questioning. *Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). Failure to comply with *Miranda* results in the forfeiture of the State's right to use any statement made by the accused during a custodial interrogation. *Id.* Like the Due Process Clause, *Miranda* protects defendants from government coercion leading them to surrender rights protected by the Fifth Amendment, but it

10

goes no further. *Oursbourn*, 259 S.W.3d at 170. Therefore, due process and *Miranda* claims of involuntariness require an objective assessment of police behavior. *Id*. at 171.

In determining whether a confession was voluntary courts examine the totality of circumstances surrounding the suspect's confession. *Lugo*, 299 S.W.3d at 450. "The ultimate question is whether the suspect's will was overborne." *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997) (en banc). The law in Texas is well-settled that the police may use some types of "'trickery and deception'" during an interrogation to elicit a confession. *See Wilson v. State*, 311 S.W.3d 452, 461 (Tex. Crim. App. 2010); *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996). For example, courts have upheld confessions obtained by investigators who lied about the state of the evidence while interrogating a suspect. *See Weaver v. State*, 265 S.W.3d 523, 534-35 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Rodriquez v. State*, 934 S.W.2d 881, 890-91 (Tex. App.—Waco 1996, no pet.). "Trickery or deception does not make a statement involuntary unless the method was calculated to produce an untruthful confession or was offensive to due process." *Creager*, 952 S.W.2d at 856.

Here, Sergeant Altemus did not engage in trickery. He merely complied with McNinch's request that they talk "man to man," instead of "officer to felon." McNinch provided no argument as to how the sequence of events, as evidenced by

the video, produced an untruthful confession, was offensive to due process, or otherwise caused his will to be overborne. At the time of his confession, McNinch was in handcuffs, in police custody, had been Mirandized, and knew that officers had seized evidence that could be used against him. When McNinch confessed to buying the marijuana, the confession by the tree had concluded, and Sergeant Altemus had already placed McNinch back into the police car. On this record, we cannot conclude McNinch's will was overborne. *See Green*, 934 S.W.2d at 99-101.

## C. Passage of Time Following *Miranda* Warnings

McNinch also argues in issue one that "during this [second] interview[,] Altemus did not read [McNinch] his Miranda warnings and quite some time had passed since being read his warnings during the initial interview." We conclude this argument was raised in the trial court and, therefore, was preserved for review. *See* Tex. R. App. P. 33.1. Prior cases have addressed the situation in which a suspect is warned about his Miranda rights, a break in questioning occurs, and questioning resumes without the administration of new Miranda warnings. *See, e.g., Bible v. State*, 162 S.W.3d 234, 241-42 (Tex. Crim. App. 2005); *Ex parte Bagley*, 509 S.W.2d 332, 337-38 (Tex. Crim. App. 1974); *Stallings v. State*, No. 09-09-00200-CR, 2010 WL 2347244, at **2-3 (Tex. App.—Beaumont June 9, 2010, pet. ref'd) (mem. op.). If the totality of the circumstances indicates that the

12

second interview is essentially a continuation of the first, the Miranda warnings remain effective as to statements made during the second interview. *Dunn v. State*, 721 S.W.2d 325, 328 (Tex. Crim. App. 1986) (holding "rewarning is not required where the interrogation is only a continuation about the same offense"), *abrogated on other grounds by Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *Stallings*, 2010 WL 2347244, at **2-3. In making this determination courts have considered the following factors: (1) the passage of time, (2) whether the second interrogation was conducted by a different person; (3) whether the interrogation related to a different offense; (4) whether the officer reminded defendant of his earlier warnings. *See Bible*, 162 S.W.3d at 242.

In the present case, the police video established that a period of approximately twenty-five minutes passed between the time McNinch was given his Miranda warnings and the time he confessed. During that twenty-five minute time frame, the investigation was ongoing and McNinch remained handcuffed in the police car. Additionally, McNinch confessed to Sergeant Altemus who had previously given him his Miranda warnings and had previously questioned him regarding the same offense. We conclude the Miranda warnings were not rendered ineffective by the passage of time in this case. We overrule issue one.

### III.    ARTICLE 38.22 INSTRUCTION

In issue four, McNinch complains that the trial court erred in failing to provide the jury a general instruction on the law of voluntariness of custodial confessions pursuant to article 38.22, section 6 of the Texas Code of Criminal Procedure.

#### A. Involuntary Confession under Article 38.22, Section 6

Article 38.21 of the Texas Code of Criminal Procedure provides, "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). From a general standpoint, article 38.22 governs the admissibility of an accused's written and oral statements that are the product of custodial interrogations. *Oursbourn*, 259 S.W.3d at 171; *see* Tex. Code Crim. Proc. Ann. art. 38.22. Section 6 of article 38.22 states, "[i]n all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions." Tex. Code Crim. Proc. Ann. art. 38.22, § 6.

Claims of involuntariness under article 38.22, section 6 need not be predicated on police overreaching, but may be. *Oursbourn*, 259 S.W.3d at 172. They may also involve inquiries into the state of mind of the accused. *Id*. While

14

article 38.22 is aimed at protecting suspects from police overreaching, section 6 may also be construed as protecting people from themselves because the sole inquiry is whether the statement was made voluntarily, "without compulsion or persuasion." *Id*.; *see* Tex. Code Crim. Proc. art. 38.21. Thus, "[a] confession given under the duress of hallucinations, illness, medications, or even a private threat . . . could be involuntary under Article 38.21[.]" *Oursbourn*, 259 S.W.3d at 172.

Article 38.22, section 6, provides for a general instruction by which the jury is asked to determine whether a defendant's statement was made under voluntary conditions. *Id*. at 173. Section 6 contemplates that a specific sequence of events have taken place before the trial court becomes obligated to provide the jury with a voluntariness instruction. *Id*. at 175. First, the party must notify the trial judge there is an issue about the voluntariness of the confession, or the trial judge raises the issue sua sponte, then the trial judge must hold a hearing outside the presence of the jury and make a determination regarding whether the confession was voluntary. *Id*. The trial judge must make written findings of fact and conclusions of law in support of his ruling. Tex. Code Crim. Proc. Ann. art. 38.22, § 6. If the trial judge determines the confession was voluntary, it will be admitted, but the party opposing admission may offer evidence before the jury suggesting that the confession was not voluntary. *Oursbourn*, 259 S.W.3d at 175. If such evidence is

15

presented to the jury, the trial judge must give the jury a voluntariness instruction. *Id.* "The Section 6 requirement that voluntariness be litigated in some manner before a jury instruction becomes necessary ensures that the trial judge is on notice that the instruction is required." *Id.* at 176.

If the defendant failed to submit a proposed jury instruction, or failed to object to the lack of such an instruction, any potential error in the charge is reviewed only for egregious harm. *Id.* at 174 (citing *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007)); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

### B. Analysis

McNinch argues the evidence in the police video, which was played for the jury, was sufficient to raise the issue of voluntariness, creating a duty on the trial court to provide the jury a voluntariness instruction in the charge. McNinch contends "[t]his is a statutory claim and focuses upon [McNinch's] subjective mental state[]" at the time of his confession. McNinch concedes that he did not request an instruction on voluntariness, nor did he object to the lack thereof; however, he contends he suffered egregious harm.

Initially, we note that we have some reservations about whether the voluntariness issue was properly raised in the trial court. During the pretrial hearing on McNinch's motion to suppress, defense counsel did not cite article

16

38.22 or address the language of the statute as grounds for his motion, did not directly argue that McNinch's confession was involuntary, and did not seek or secure findings from the trial court regarding whether McNinch's confession was involuntary. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6. Defense counsel did not clearly communicate an objection to the admission of the confession on the basis of article 38.22 or clarify that he desired a hearing or a ruling on voluntariness pursuant to the statute. *See id.*

McNinch relies solely on the admission of the police video to support his assertion that the issue of whether his statement was voluntarily given was litigated before the jury. When the video was admitted into evidence and played for the jury, defense counsel did not object on the basis of article 38.22, or otherwise argue that the confession was involuntary. Defense counsel did not elicit any testimony from Sergeant Altemus, or any of the testifying officers, regarding the circumstances surrounding McNinch's confession and whether it was voluntarily given. Nor did McNinch offer any testimony regarding the circumstances surrounding his confession. At trial, when asked why he confessed to having the gun and the marijuana, McNinch never referenced his conversation with Sergeant Altemus. McNinch's only explanation at trial for his confession regarding the marijuana was that he confessed in order to obtain favorable treatment. At trial,

17

McNinch appears to have denied that he confessed to possessing and firing the gun located by police.[4]

From the record before us, we cannot conclude that McNinch was egregiously harmed by any potential error resulting from the trial court's failure to include an instruction on voluntariness.[5] The State presented evidence that witnesses at the scene identified McNinch as the individual who had fired rounds from a gun on the property.[6] One of the witnesses at trial testified that he heard two gunshots and saw McNinch walking toward him with a gun. Officers who responded to the scene located the gun described by witnesses, in a well-house on the property to the side of McNinch's residence. The gun had a bullet in the chamber and was in "firing mode." Finally, McNinch's testimony at trial was not

---

[4] McNinch testified that he told officers he had been "shooting off rounds" while target shooting, and that another resident owned the gun the police found on the property. Notably, McNinch's trial testimony regarding the firearm is inconsistent with the position he now asserts on appeal and is contradicted by the video.

[5] For purposes of this appeal, we assume without deciding that the trial court erred in failing to instruct the jury on the issue of voluntariness.

[6] Notably, witness testimony at trial that McNinch fired two gunshots was consistent with McNinch's confession on the video that he fired off two rounds trying to run a nonresident off the property.

18

consistent with what he told officers at the scene prior to confessing.[7] The record reflects that McNinch's conviction did not turn on the admissibility of his confession. We overrule issue four.

## IV. AFFIRMATIVE LINKS

In issues two and three, McNinch argues that the evidence is legally insufficient to establish the affirmative links necessary to prove the elements of possession of a firearm and possession of marijuana.

We review the sufficiency of the evidence under the standard of review in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under this standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the trier of fact's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts.

---

[7] On the video McNinch told responding officers that other residents may have thought they heard gunshots because he had been popping fireworks. At trial, McNinch testified that the sound other residents thought were gunshots "could have been fireworks that somebody was popping off." McNinch also testified at trial that he and some other residents had been target shooting prior to the incident, but that he had only used a BB gun. McNinch never once mentioned target shooting to the officers who responded at the scene. McNinch's trial testimony is inconsistent with his pre-confession statements on the video.

19

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318-19). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.*

To establish a possession offense, a person must voluntarily possess the prohibited item. Tex. Penal Code Ann. § 6.01(a) (West 2011). Possession is voluntary "if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id.* § 6.01(b). We analyze whether the evidence is sufficient to prove the offense of possession of a firearm by a felon under the same standards adopted for determining whether the evidence is sufficient to establish possession of a controlled substance. *Bollinger v. State*, 224 S.W.3d 768, 773 (Tex. App.—Eastland 2007, pet. ref'd). The evidence must be sufficient to establish that McNinch exercised care, control, and management over the firearm and the marijuana. *See Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986).

When a defendant does not have exclusive possession of the place where the contraband was found, we cannot conclude he had knowledge of and control over the contraband unless there are additional independent facts that "affirmatively link" the defendant to the contraband. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). The affirmative links rule is aimed at protecting innocent

20

bystanders from conviction based solely on their proximity to someone else's contraband. *Id*.

Some of the factors used by courts to "affirmatively link" a defendant to contraband are whether: (1) the defendant was present during the search; (2) the contraband was found in plain view; (3) the defendant was in proximity to and had accessibility to the contraband; (4) the defendant had a right of possession to the place where the contraband was found; (5) the defendant made incriminating statements when arrested; and (6) the defendant's conduct indicated a consciousness of guilt. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006); *Nixon v. State*, 928 S.W.2d 212, 215 (Tex. App.—Beaumont 1996, no pet.). It is "not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162.

Our review of the record reveals multiple affirmative links to connect McNinch to both the firearm and the marijuana, not the least of which is his confession to both crimes as shown on the police video. In addition to his confession, McNinch was present and waiting at the scene when the officers arrived. Because McNinch was detained, he was present during the search. The marijuana was found in a kitchen cabinet in the house McNinch rented. Though McNinch stated that the marijuana belonged to a friend that was staying with him, officers spoke with this individual at the scene and appear to have immediately

21

excluded him as a suspect.  McNinch ultimately confessed to two different officers that he purchased the marijuana.[8]  The firearm was found in a well-house near McNinch's house.[9]  The State presented evidence that witnesses saw McNinch on the property with the gun.  McNinch's conduct also indicated a consciousness of guilt.  McNinch made contradictory statements to police regarding why witnesses would have told police he had fired a gun.  In addition, McNinch's trial testimony did not comport with what he initially told officers at the scene.

McNinch's confession, in conjunction with other affirmative links, such as his presence at the scene when officers arrived, the fact that the marijuana was found in his residence and the firearm near the residence, as well as his contradictory statements to police, provide ample evidence linking him to the firearm and the marijuana.  Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found beyond a reasonable doubt that McNinch exercised control over the firearm and the marijuana.  We overrule issues two and three.

Having overruled all of McNinch's appellate issues, we affirm the judgment of the trial court.

---

[8] In addition to giving Sergeant Altemus a confession on both offenses, McNinch also admitted to Officer Holden in route to the jail that he had purchased the marijuana.

[9] Notably, McNinch served as the property manager.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 1, 2013
Opinion Delivered October 30, 2013
Do not publish

Before Gaultney, Kreger, and Horton, JJ.