**Opinion issued August 16, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00923-CR

_____

**ADAM P. PATY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 11**
**Harris County, Texas**
**Trial Court Case No. 1921947**

---

## MEMORANDUM OPINION

A jury found appellant, Adam P. Paty, guilty of the misdemeanor offense of driving while intoxicated.[1] The trial court assessed his punishment at confinement

---

[1] *See* TEX. PENAL CODE ANN. § 49.04 (Vernon Supp. 2015).

for 180 days, suspended the sentence, placed him on community supervision for eighteen months, and assessed a fine of $1,000. In three issues, appellant contends that the evidence is legally insufficient to support his conviction and the trial court erred in denying his motion to suppress evidence and not submitting his requested jury instruction.[2]

We affirm.

## Background

Travis Everett, a shift manager at a McDonald's restaurant, testified that on October 2, 2013, while he was working "overnight," a person "pulled" a truck up to the drive-through "order[ing] booth," but then appeared to "dr[i]ve off." About ten to fifteen minutes later, Everett heard "honking" in the drive-through lane and realized that the person had not in fact "dr[iven] off," but had instead stopped his truck in the drive-through lane, "impeding" the lane's traffic. When Everett and another McDonald's employee went outside to investigate, they found a "[w]hite male," alone and asleep, "slumped over" the steering wheel of the truck. Everett and the employee "yelled at [the driver's] ear" and "shook his truck" in an attempt to wake him; however, he did not "acknowledge" them. When the employee "grabbed [the driver's] shoulder," he still did not respond. Everett then telephoned for emergency assistance because he was "worried" about his and the employee's safety.

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

2

After law enforcement officers arrived, "it took . . . a while [for them] to actually get a response from [the driver]." And when the man was eventually removed from his truck, he did not "look sober."

Everett further testified that the driver was the only person in the truck, "no one else got into" the truck while Everett was watching it, the driver was not "awake" or "alert" while he sat in the truck, and the truck was turned "on" and "in gear" as it sat in the drive-through lane. He noted that the "[w]hite male" "drove [the truck] into the [restaurant's] drive-through [lane] and passed out." However, Everett could not, at trial, identify appellant as the driver of the truck because the driver never "look[ed] up" at or "acknowledge[d]" Everett.

Harris County Sheriff's Office Deputy F. McGregor testified that he, while working the "night shift" on October 2, 2013, was "dispatched to a medical emergency" at the McDonald's restaurant. When he arrived, he saw a "vehicle . . . sitting in the drive-through lane" and appellant, "the only [person] in the vehicle," sitting "behind the wheel." McGregor's "first step was to check to see if anything medically was wrong with [appellant]." After speaking to an Emergency Medical Service ("EMS") technician, who had previously arrived at the scene, McGregor went to speak to appellant, who was still in the truck and "sitting behind the wheel." According to McGregor, no one else was in the truck other than

3

appellant, and he "initiate[d] contact" with appellant to fulfill his "community caretaking" function, to see "what was wrong," and to find out "what was going on."

Deputy McGregor explained that the truck had already been "turned . . . off" by EMS by the time that he approached the driver. When he "made [initial] contact" with appellant, he noted that appellant spoke with "slurred speech," had "bloodshot" eyes, "[s]melled [of] alcohol," and "wasn't aware of his surroundings." Appellant also "appeared to be intoxicated." Inside of the truck, McGregor saw an "unopened can of beer," which was "cold" to the touch. Appellant "admit[ted] to consuming alcohol" and "several beers" earlier while "at a friend's house." And appellant told McGregor that "he was going home" from that friend's house.

When Deputy McGregor subsequently asked appellant to exit the truck, he "noticed that [appellant] was unsteady on his feet." After appellant refused to take any field sobriety tests, McGregor transported him to a police station because he believed that it was unsafe for appellant to drive. And appellant, at the station, refused to provide a blood specimen. By the end of his investigation, McGregor had concluded that appellant was "intoxicated." During McGregor's testimony, the trial court admitted into evidence State's Exhibit 7, a "video . . . of [appellant's] actions" while at the police station.

On cross-examination, Deputy McGregor admitted that he did not actually see appellant "driv[e]" his truck to the McDonald's restaurant and it is "possibl[e]" that

4

"somebody else could have . . . driven the vehicle there" and gotten out of "it in the drive-through [lane]."

**Sufficiency of Evidence**

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction because the State "failed to prove that . . . [he] operated a motor vehicle" or "was intoxicated at the time of [the truck's] operation."

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S. W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

We note that in reviewing the legal sufficiency of the evidence, a court must consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is just as probative as direct evidence in establishing the guilt of an actor, and a conviction for the offense of driving while intoxicated may be supported solely by circumstantial evidence. *See Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

A person commits the offense of driving while intoxicated if he is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (Vernon Supp. 2015). "Intoxicated" is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol." *Id.* § 49.01(2)(A) (Vernon 2011) (internal quotations omitted). The term "operating," as utilized in the Texas Penal Code, is not defined. *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995); *see id.* § 49.04(a).

In assessing the sufficiency of the evidence to prove that a defendant was "operating a motor vehicle," we look to the totality of the circumstances. *Kirsch v. State*, 357 S.W.3d 645, 650–51 (Tex. Crim. App. 2012); *Denton*, 911 S.W.2d at 390. As the Texas Court of Criminal Appeals has concluded, a person "operat[es] a motor vehicle" when the totality of the circumstances demonstrates that "the defendant

6

took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use." *Denton*, 911 S.W.2d at 390; *see also Dornbusch v. State*, 262 S.W.3d 432, 436 (Tex. App.—Fort Worth 2008, no pet.).

"Under this standard, 'operating' a motor vehicle is interpreted very broadly." *Smith v. State*, 401 S.W.3d 915, 919 (Tex. App.—Texarkana 2013, pet. ref'd); *Dornbusch*, 262 S.W.3d at 436. And because "operating a motor vehicle" is defined "so broadly," "any action that is more than mere preparation toward operating the vehicle would necessarily be an 'action to affect the functioning of [a] vehicle in a manner that would enable the vehicle's use.'" *Dornbusch*, 262 S.W.3d at 436 (alteration in original) (quoting *Strong v. State*, 87 S.W.3d 206, 216 (Tex. App.—Dallas 2002, pet. ref'd)).

While driving does involve "operat[ion]" of a motor vehicle, operation does not necessarily involve the actual driving of a motor vehicle. *Denton*, 911 S.W.2d at 389. In fact, numerous cases have upheld driving-while-intoxicated convictions, even when the person found "operating a motor vehicle" was either asleep or unconscious in that vehicle. *See, e.g.*, *Dornbusch*, 262 S.W.3d at 436–38 (defendant found in driver's seat, either asleep or passed out, while car in restaurant's parking lot with headlights on and engine running); *Freeman v. State*, 69 S.W.3d 374, 375–76 (Tex. App.—Dallas 2002, no pet.) (defendant found asleep in car "with its right front tire against a curb, its motor running, the gear in the 'drive' position, and its

7

lights on"); *Hearne v. State*, 80 S.W.3d 677, 679–80 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (defendant found asleep in driver's seat with truck engine running). Thus, in order to "operat[e] a motor vehicle," one need not drive or even move it. *Smith*, 401 S.W.3d at 919–20.

Appellant specifically argues that the evidence does not establish that he was "operating a motor vehicle" because Deputy McGregor, "[t]he only person who was able to identify [him as the person] behind the wheel" of the truck, "did not arrive until after the truck was in park and turned off" and Everett, "the first person to view the truck in the drive-through [lane]," could not "identify" him as the truck's driver.

Here, Everett testified that while he was working "overnight" at a McDonald's restaurant, he found a truck stopped in and "impeding" the restaurant's drive-through lane. Everett and another employee saw a "[w]hite male" alone and asleep "slumped over" the steering wheel of the truck. They "yelled at [the driver's] ear," "shook [the] truck," and "grabbed [the driver's] shoulder" in an attempt to wake him. However, the driver was unresponsive.

Everett explained that the driver was the only person in the truck, "no one else got into" the truck while Everett was watching it, and the truck was turned "on" and "in gear" as it sat in the drive-through lane. According to Everett, the "[w]hite male" in the truck "drove [it] into the [McDonald's] drive-through [lane] and passed out."

8

Deputy McGregor testified that when he arrived at the restaurant, he saw a "vehicle . . . sitting in the drive-through lane" and appellant "sitting behind the wheel of th[at] vehicle." When McGregor initially spoke with appellant, he was still in the truck, "sitting behind the wheel of the vehicle." And appellant told McGregor that "he was going home" from a friend's house. McGregor explained that the truck had been "turned . . . off" by EMS, who had arrived at the restaurant before McGregor.

Such direct and circumstantial evidence, and any reasonable inferences that may be drawn from it, is sufficient to establish that appellant "operat[ed]" the truck in which he was found stopped in the McDonald's drive-through lane. *See Clayton*, 235 S.W.3d at 778. And it was not necessary for Deputy McGregor to specifically testify that he saw appellant "driving" or "manipulat[ing] the controls of the truck." Nor was it necessary for him to testify that the truck was turned on or "in gear" when he arrived at the scene.[3] *Cf. Stephenson v. State*, No. 14-13-00303-CR, 2014 WL 3051229, at *3 (Tex. App.—Houston [14th Dist.] July 3, 2014, pet. ref'd) (mem. op., not designated for publication) ("[C]ircumstantial evidence placing a defendant on the driver's side of a vehicle . . . [is] sufficient to prove that the defendant

---

[3] In his brief, appellant makes a passing reference to the fact that Deputy McGregor did not see appellant's truck "on the actual roadway." However, "a parking lot at a public place," like a restaurant, "is not legally different [from] a roadway" in regard to the criminal offense of driving while intoxicated. *See Dornbusch v. State*, 262 S.W.3d 432, 437–38 (Tex. App.—Fort Worth 2008, no pet.).

9

operated the vehicle."); *Marroquin v. State*, No. 08-12-00316-CR, 2014 WL 1274136, at *2–3 (Tex. App.—El Paso Mar. 28, 2014, pet. ref'd) (not designated for publication) (rejecting defendant's argument "State failed to prove he was operating a motor vehicle" where law enforcement officer "did not observe him driving, the truck's engine was not running, [and] the truck was disabled for some unknown period of time"); *Dangerfield v. State*, No. 06-09-00185-CR, 2010 WL 3023424, at *8 (Tex. App.—Texarkana Aug. 4, 2010, no pet.) (mem. op., not designated for publication) (evidence sufficient to establish defendant "operated" car where "eyewitness" "saw a motor vehicle go up the guardrail and hit the pillar" and law enforcement officer, arriving at scene, found defendant in driver's seat).

Appellant further asserts that the State "failed to offer any evidence of a temporal link between . . . [the] operation [of the truck] by [him] and his intoxication [that was] discovered after Deputy McGregor arrived" at the scene. And "[i]t is . . . not possible to rule out that [he] became intoxicated after arriving behind the driver's wheel of the truck parked in the McDonald's parking lot." In other words, appellant does not challenge the State's evidence that he was intoxicated at the time he interacted with McGregor; rather, he argues that there is no evidence that he was intoxicated while he "operat[ed]" the truck.

To support a finding that a defendant was intoxicated while operating a motor vehicle, there must be a "temporal link" between the defendant's intoxication and

his driving. *Kuciemba*, 310 S.W.3d at 462; *McCann v. State*, 433 S.W.3d 642, 649 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Such a finding can be supported by direct or circumstantial evidence. *Kuciemba*, 310 S.W.3d at 462 (conviction can be supported "solely by circumstantial evidence"); *McCann*, 433 S.W.3d at 649.

Appellant admitted that he had "consum[ed] alcohol" and "several beers" "at a friend's house" and was "going home" from that friend's house when he encountered Deputy McGregor in the McDonald's drive-through lane. *See McCann*, 433 S.W.3d at 649–50 (evidence sufficient to establish "temporal link" where defendant "told police officers that he had been drinking with a family member before he left the house to drive back to his hotel"); *see also Gay v. State*, No. 04-14-00070-CR, 2015 WL 794493, at *2–3 (Tex. App.—San Antonio Feb. 25, 2015, no pet.) (mem. op., not designated for publication) (evidence of "temporal link" sufficient where defendant admitted "he drank earlier that evening"); *King v. State*, No. 05-13-00178-CR, 2014 WL 2807993, at *7 (Tex. App.—Dallas June 18, 2014, no pet.) (mem. op., not designated for publication) ("King admitted that he had been drinking beer that evening.").

The evidence also establishes that a "[w]hite male" "drove [his truck] into the [McDonald's] drive-through [lane] and passed out." About ten or fifteen minutes after that "[w]hite male" stopped his truck in the restaurant's drive-through lane, two employees found him alone and asleep, or "passed out," inside of the truck, which

was "impeding" the drive-through lane's traffic. They "yelled" at the man, "grabbed his shoulder," and "shook his truck" in attempt to wake him. However, even after EMS personnel and law enforcement officers arrived, "it took . . . a while to actually get a response from [the driver]." *Cf. King*, 2014 WL 2807993, at *7 (evidence sufficient to establish "temporal link" where defendant, who admitted to drinking beer, "remained asleep or passed out at least as long as it took [a gas station] employee to report his presence to the police, and for [an] [o]fficer . . . to arrive at the scene").

Deputy McGregor, who subsequently arrived at the restaurant, saw appellant sitting in the driver's seat of the truck, which sat in the drive-through lane. When McGregor "made [initial] contact" with appellant, he noted that appellant had "slurred speech" and "bloodshot" eyes, "[s]melled [of] alcohol," "wasn't aware of his surroundings," and was "unsteady on his feet." *Cf. Kuciemba*, 310 S.W.3d at 462–63 (noting person's presence in driver's seat supported inference collision occurred short time before and "[b]eing intoxicated at the scene" of collision constituted circumstantial evidence defendant's intoxication caused collision). McGregor further testified that appellant "appeared to be intoxicated" and had an "unopened can of beer," which was still "cold," in his truck. *Cf. Marroquin*, 2014 WL 1274136, at *2–3 (evidence of "temporal link" sufficient where officer found "two large cans of beer [in truck]—one empty and the other half-full and cold to the

12

touch"). Appellant also refused to complete any field sobriety tests and refused to provide a blood specimen to law enforcement officers after being taken to the police station. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (defendant's refusal to submit to "breath test" "tends to show a consciousness of guilt"); *see also Derrick v. State*, No. 05-14-00802-CR, 2015 WL 2195185, at *3 (Tex. App.—Dallas May 8, 2015, no pet.) (mem. op., not designated for publication) (individual's refusal to submit to "breath test can support the inference that he believed he would fail the test because he thought he was intoxicated").

Although appellant complains that Deputy McGregor "did not know how long EMS [personnel] had been on the scene prior to his arrival" and "the record does not offer any guidance as to when [he] operated the vehicle or the amount of time that passed before . . . McGregor removed him from his truck," it is not necessary for the State to prove the exact time during which a defendant was "operating a motor vehicle" in order to prove that he drove while intoxicated. *See Marroquin*, 2014 WL 1274136, at *2 (noting "State was not required to establish" "how recently the truck was driven or how much time elapsed between the truck coming to rest and [law enforcement officer]'s arrival"); *Warren v. State*, 377 S.W.3d 9, 14 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("[e]ven without knowing the time span between when the accident occurred and when [the law enforcement officer] arrived," evidence "sufficient to support a finding by the jury that [defendant] was

intoxicated while he was driving"); *see also Kuciemba*, 310 S.W.3d at 462 (quoting Nebraska Supreme Court and stating, "[T]here is no direct evidence establishing the amount of time which elapsed between [the defendant's] . . . last act of driving and [the deputy's] . . . arrival at the scene. . . . [W]e do not regard such evidence as essential . . . ." (internal quotations omitted))

Viewing all of the evidence and the inferences therefrom in the light most favorable to the jury's verdict, we hold that the evidence is legally sufficient to support appellant's conviction of the offense of driving while intoxicated.

We overrule appellant's first issue.

### Suppression of Evidence

In his second issue, appellant argues that the trial court erred in denying his motion to suppress evidence because Deputy McGregor "lacked reasonable suspicion to seize" appellant and "all [physical] evidence resulting from [his seizure] should have been suppressed." In response, the State asserts that appellant did not preserve this issue for appeal.

To preserve a complaint for appellate review, the record must show that the complaining party made a timely and specific request, objection, or motion stating the specific grounds for the ruling desired. TEX. R. APP. P. 33.1(a)(1); *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or refused

14

to rule and the complaining party must have objected to the refusal. TEX. R. APP. P. 33.1(a)(2); *Garza*, 126 S.W.3d at 81–82. There are two main purposes behind requiring a timely and specific objection: (1) to inform the trial court of the basis of the objection and give it the chance to make a ruling on it and (2) to give opposing counsel the opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009); *Garza*, 126 S.W.3d at 82. To preserve error, a party "must be specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the [court] to understand him at a time when the trial court is in a proper position to do something about it.'" *Resendez*, 306 S.W.3d at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). A reviewing court will not consider errors, even those of constitutional magnitude, that were not called to the trial court's attention. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995); *Rothstein v. State*, 267 S.W.3d 366, 373 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). A party also fails to preserve error when the contention urged on appeal does not comport with the specific complaint made in the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009); *Rothstein*, 267 S.W.3d at 373.

Further, we consider the context of the complaint to determine if the party preserved error. *Resendez*, 306 S.W.3d at 313. If the correct ground for exclusion was obvious to the trial court and opposing counsel, waiver will not result from a

15

general or imprecise objection. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977). However, if the context shows that a party failed to effectively communicate his argument, then the error is deemed waived on appeal. *Lankston*, 827 S.W.2d at 909.

Here, appellant, before trial, filed a generic motion to suppress "physical evidence" "seized from [him] on the date of his arrest by law enforcement officers" on the ground that it was purportedly "taken in direct violation" of the United States and Texas Constitutions. *See* U.S. CONST. amends. IV, XIV; TEX. CONST. art. I, § 9; *Wade v. State*, 164 S.W.3d 788, 792 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (characterizing defendant's suppression-motion as "a generic form motion" where it sought to suppress and exclude "[a]ny items seized as a result of [the defendant's] arrest; and any other item or information obtained as the result of the arrest and/or search of [the defendant]" (internal quotations omitted)). The trial court did not hold a pretrial hearing on appellant's suppression-motion, but rather informed the parties that it would "carry[] [the motion] with the trial."

When a trial court does not hold a pretrial hearing on a motion to suppress evidence, the defendant must then timely object to that evidence at trial to preserve error; in other words, the mere filing of the suppression-motion is not sufficient. *Calloway v. State*, 743 S.W.2d 645, 649–50 (Tex. Crim. App. 1988); *Ross v. State*, 678 S.W.2d 491, 493 (Tex. Crim. App. 1984); *see also Coleman v. State*, 113 S.W.3d

16

496, 499–500 (Tex. App.—Houston [1st Dist.] 2003) (filing of suppression-motion alone does not preserve any error in admission of evidence sought to be suppressed), *aff'd on other grounds*, 145 S.W.3d 649 (Tex. Crim. App. 2004).

At trial, appellant made a single objection referencing his motion to suppress, and he did so in response to the following testimony of Deputy McGregor:

| | |
|---|---|
| [State]: | When you got there on the scene, what was your first [step] when you went to talk to EMS? |
| [McGregor]: | My first step was to check to see if anything medically was wrong with the driver. |
| [State]: | Okay. After your interview with EMS was there a medical issue that you were aware of. |
| [McGregor]: | Not that I was aware of. |
| [State]: | What was your next action after your interview with EMS? |
| [McGregor]: | To speak with the driver. |
| [State]: | Okay. What happened next? |
| [McGregor]: | I spoke with the driver and had a strong smell of alcohol -- |
| [Defense counsel]: | Objection, Your Honor. Again, this goes to the crux of our Motion to Suppress with regard to probable cause. There's been no driving facts. |
| The Court: | Overruled. |

17

It is unclear from both his objection at trial, and his generic motion to suppress, what "physical evidence" appellant actually sought to have the trial court suppress.[4] Further, neither appellant's suppression-motion, nor his objection at trial, effectively communicated to the trial court his argument regarding the suppression of evidence. *See Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) ("[Defendant]'s global statements in his pretrial motion to suppress were not sufficiently specific to preserve the arguments he now makes on appeal."); *Resendez*, 306 S.W.3d at 313 (error not preserved unless defendant's objection "specific enough so as to 'let the trial [court] know what he wants, why he thinks himself entitled to it, and do so clearly enough for the [court] to understand him at a time when the trial court is in a proper position to do something about it'" (quoting *Lankston*, 827 S.W.2d at 909)); *Rothstein*, 267 S.W.3d at 373–74) (defendant's "generic motion to suppress was not specific enough to preserve [his] argument for appellate review"). And, neither appellant's motion nor his objection at trial brought

---

[4]    To the extent that appellant sought to suppress evidence at trial, we note that State's Exhibit 7, a "video . . . of his actions" at the police station, was not referenced by appellant in his suppression-motion. Thus, appellant has waived any complaint regarding this exhibit because he, at trial, only objected to its admission on the basis of "improper predicate" and did not assert either his lack-of-reasonable-suspicion argument or community-caretaking argument, which he now attempts to advance on appeal. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) (complaint not preserved for appellate review if legal basis of appellate complaint varies from complaint raised at trial). Further, although appellant, in his reply brief, notes that *after* the trial court admitted State's Exhibit 7 into evidence, his trial counsel inexplicably and unprompted stated, "[o]ver defense objection as to probable cause," this was also not sufficient to preserve error.

to the trial court's attention the issues that he now raises on appeal, i.e., that "Deputy McGregor lacked reasonable suspicion at the time his seized [appellant] and ordered him to step out [of the truck]" and the State "cannot invoke" the "community-caretaking exception to the Fourth Amendment." (Internal quotations omitted.) *See Lovill*, 319 S.W.3d at 691–92 (error not preserved when contention urged on appeal does not comport with specific complaint made in trial court); *see also Johnson v. State*, 263 S.W.3d 287, 290 (Tex. App.—Houston [1st Dist.] 2007, pet. dism'd) ("generic motion to suppress did not adequately preserve the error," especially where it did not "bring to the trial court's attention the issue raised on appeal"); *Rothstein*, 267 S.W.3d at 373–74 (error not preserved where "[defendant]'s generic motion to suppress was not specific" and "argument on appeal d[id] not comport with any objection raised in the motion . . . or at the suppression hearing").

Additionally, to the extent that appellant asserts that his motion for directed verdict, advanced after the State rested its case-in-chief, preserved his complaint that the trial court should have suppressed all "physical evidence" "seized from [him]," we note that in order for such error to be preserved on appeal, the record must show that appellant made a timely request, objection, or motion and obtain a corresponding ruling by the trial court. TEX. R. APP. P. 33.1(a); *Nelson v. State*, 626 S.W.2d 535, 536 (Tex. Crim. App. [Panel Op.] 1981). And a motion to suppress is untimely if it is never presented to, or ruled upon by, the trial court before trial and

is later made orally after the State rests its case-in-chief.  *See Sims v. State*, 833 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd); *see also Nelson*, 626 S.W.2d at 536 (even if defendant secured ruling on motion to suppress evidence obtained by illegal search and seizure, it would have been untimely because motion first presented after State rested its case).  Moreover, we have previously held that a motion to suppress that is included "as an argument in favor of a motion for directed verdict," after the State has rested its case-in-chief, is untimely and does not preserve any error for appellate review.  *See Connor v. State*, No. 01-12-000971-CR, 2014 WL 3107619, at *2–3 (Tex. App.—Houston [1st Dist.] July 8, 2014, no pet.) (mem. op., not designated for publication).

Finally, in support of his argument that he has preserved his suppression-issue for our review, appellant relies on *Garza v. State*, 126 S.W.3d 79 (Tex. Crim. App. 2004).  Appellant's reliance is misplaced.  Although it is undisputed here, as it was in *Garza*, the trial court did not hold a pretrial hearing on appellant's motion to suppress and instead directed that the motion would be "carr[ied]" with trial, the trial court in *Garza* further instructed the defendant to "wait until all the evidence was presented before . . . obtain[ing] any ruling from the [court]" on his motion.  126 S.W.3d at 84.  In other words, the trial court, in *Garza*, made "clear that any additional attempt by [the defendant] to object or obtain a ruling during . . . testimony . . . would have been futile, because the [court] had already told

20

[the defendant] that [it] would not rule on the motion until the jury had heard the evidence." *Id.* at 84–85. Here, in contrast, there is nothing in the record that indicates that the trial court gave a similar instruction to appellant, thereby alleviating him of his burden to object to the evidence at trial in order to preserve error for appellate review. *See Sample v. State*, 405 S.W.3d 295, 300–01 (Tex. App.—Fort Worth 2013, pet. ref'd) (defendant did not preserve error where he "did not file a pretrial motion to suppress," "he did not object before or during the [S]tate's case-in-chief," and "nothing in the record" indicated *Garza* exception applied); *Mitchell v. State*, Nos. 14-08-00557-CR, 14-08-00558-CR, 2009 WL 2568330, at *2 (Tex. App.—Houston [14th Dist.] Aug. 20, 2009, no pet.) (mem. op., not designated for publication) (defendant waived complaint "by not objecting or urging his motion to suppress when the State offered the . . . testimony" because "[t]he trial judge made no pretrial comments suggesting that the objection requirement was excused").

Accordingly, we hold that appellant has not preserved his suppression-issue for our review. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (appellate court should not address merits of issues not preserved for appeal).

## Jury Charge Error

In his third issue, appellant argues that the trial court erred in not submitting his requested jury instruction because the instruction that the trial court actually gave

to the jury was "incomplete" and "erroneous."[5]  *See* TEX. CODE CRIM. PROC. ANN.
art. 38.23 (Vernon 2005).

> Article 38.23 provides:
>
> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.* art. 38.23(a).  Here, the trial court, in its charge to the jury, included that following
instruction:

> You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop or arrest shall be admissible in evidence against such accused.
>
> An officer is permitted, however, to make a temporary investigative detention of a motorist if the officer has a reasonable suspicion that some activity out of the ordinary is or has occurred, that the person detained is connected with such activity, and that there is some indication that the activity is related to crime or a criminal offense.
>
> A peace officer may make a temporary investigative detention of a person if the officer has a reasonable suspicion that some activity out of the ordinary is or has occurred, that the person detained is connected

---

5   We do not express any opinion on whether appellant was actually entitled to an article 38.23 instruction.  *See Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007) (listing "requirements that a defendant must meet before he is entitled to the submission of a jury instruction under [a]rticle 38.23(a)"); *see also* TEX. R. APP. P. 47.1.

22

with such activity, and that there is some indication that the activity is related to crime or a criminal offense.

Now, therefore, before you consider the testimony of [Deputy] McGregor, concerning his observation of the defendant after his detention, you must first find beyond a reasonable doubt that the officer had such reasonable suspicion, and if you do not so find beyond a reasonable doubt you will disregard such testimony.

Appellant specifically asserts that the trial court's jury instruction incorrectly defined "reasonable suspicion," failed to "explain in the application paragraph that reasonable suspicion must be present at the 'time of [appellant's] detention,'" and did not "instruct the jury that, if it did not find reasonable suspicion for [appellant's] detention, it [should] return a verdict of not guilty."

Even were we to presume that appellant is correct and the trial court's instruction was erroneous, we must still determine whether appellant was harmed by its inclusion in the jury charge. *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) ("Not all jury-charge errors require reversal."); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (after "determin[ing] whether there is error in the charge," court must then determine harm); *see also Vogel v. State*, No. PD-0873-13, 2014 WL 5394605, at *2 (Tex. Crim. App. Sept. 17, 2014) ("[W]e find no error in the court of appeals' approach in assuming without deciding error and resolving [the defendant's] case solely on harm.").

The level of harm necessary for reversal depends on whether a defendant timely and specifically objected to the trial court's instructions to the jury. *See*

23

*Reeves*, 420 S.W.3d at 816; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). If the defendant did not, then we will reverse the trial court's judgment only if the error was so egregious and created such harm that the defendant did not have a fair and impartial trial. *See Reeves*, 420 S.W.3d at 816; *Almanza*, 686 S.W.2d at 171. However, if the defendant did properly object, then reversal is required if there was "some harm" to the defendant. *Reeves*, 420 S.W.3d at 816 (internal quotations omitted); *Almanza*, 686 S.W.2d at 171; *see also* TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006).

Appellant argues that he must only show "some harm," rather than egregious harm, because he, at the charge conference, "requested" an article 38.23 instruction, "objected" to the trial court's proposed article 38.23 instruction, and "submitted" a "proposed" article 38.23 instruction to the trial court. In response, the State asserts that appellant's "complaint [on appeal] does not comport with his trial complaint," and therefore, we "should only reverse if [we] find [that] appellant . . . suffered egregious error."

During the trial court's charge conference, the following exchange occurred:

[Defense counsel]: We need a 38.23.

The Court: . . . All right. So tell me what is your proposed charge?

[Defense counsel]: We want a proposed charge on the probable cause for the arrest that would state, If you

24

have a reasonable doubt thereof, then you will not consider any evidence after.

The Court: Okay. I'll give you that.

(Discussion off the record.)

(Recess.)

The Court: Okay. Has everyone had a chance to look at the charge and are there any objections?

[Defense counsel]: Judge, the reasonable suspicion on the 38.23, there's another one in the charge bank that provides that if the officer does not observe the law violation, then you are not to consider any evidence post arrest.

The Court: I don't have anything like that and I looked at all of them. You can handwrite one in and submit it for the record, but I'm inclined to give what's in our bank.

[Defense counsel]: Well, I used it just a few months ago in Court -- I don't remember. We pulled it up. It had a specific instruction that said, If you so find that -- that -- or have reasonable doubt that a law violation occurred, then you will say that there was no probable cause and you will acquit the Defendant.

The Court: I just don't have that. I don't have anything like that in here.

. . . .

[Defense counsel]: It's [an] instruction in regard to probable cause for arrest, Your Honor.

25

The Court:                  I just think anything that specific would be improper. This is the one I'm inclined to use.

[Defense counsel]:      May I read one into the record?

The Court:                  Sure.

(Discussion off the record.)

The Court:                  What does the one you have in mind have that these don't?

[Defense counsel]:      I think it just followed up after the third paragraph; and it says, You would -- You would disregard any testimony in the evidence and find the Defendant not guilty. And it's like if there's no probable cause at that point; and then follow-up sentence was, In this event you will say -- you will not consider any other evidence for any purposes and find the Defendant not guilty.

The Court:                  Well, this says you will disregard such testimony in evidence.

[Defense counsel]:      And find the Defendant not guilty because there's no basis to go forward after that because there's not been a law violation to establish probable cause for the arrest.

. . . .

The Court:                  I don't think there's any one that has -- they all -- I mean, there's a bunch of fact-specific ones and they're all identical. I don't think there's anything that has that language. I'm going to submit it as it is. And you can -- your request is noted in the record and it's preserved, but I'm inclined to submit it to the jury as is.

26

| | |
|---|---|
| [Defense counsel]: | Judge, I object to that. That does not place the proper burden on the State with regard to . . . what the facts were that were adduced at trial. I would argue that the Court is well aware there has not been sufficient probable cause to arrest because he didn't perform any tests; and so therefore, this second charge would be the proper charge that would say, That if you consider the testimony and if you have reasonable suspicion regarding to whether or not there's any criminal activity or you don't find that beyond a reasonable doubt, then you must disregard the evidence and stop at that point and find the Defendant not guilty. That's specifically on point. |
| The Court: | Well, I'm sorry your request is denied. We're going to submit the one as proposed. Let's bring the jury in. |
| [Defense counsel]: | Then I want to submit this -- this charge as drafted as defense proposed jury charge in lieu of 38.23 that is contained therein. |
| The Court: | Okay. Just mark that Defense 2 for appellate purposes. |

Appellant then submitted to the trial court his "proposed" article 38.23 instruction, which contained the language that appellant asserts should have been included in the trial court's article 38.23 jury instruction.

We hold that appellant preserved error, and therefore, reversal is required if we conclude that the error resulted in "some harm" to appellant's rights. *See Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008) (defendant must

27

present proposed jury instruction or object to lack of one to preserve error); *see also* *Gonazales v. State*, No. 05-09-01296-CR, 2011 WL 5119440, at \*3 (Tex. App.—Dallas Oct. 28, 2011, pet. ref'd) (not designated for publication) (determining defendant preserved error by "requesting an article 38.23 instruction" and "objecting to the refusal to include an instruction in the charge").

Although the "some harm" standard is a lower threshold, it nonetheless requires a reviewing court to determine actual, rather than mere theoretical, harm. *Reeves*, 420 S.W.3d at 816. To determine harm, we weigh the following factors: (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) any other relevant factors present in the record. *Id.*; *Almanza*, 686 S.W.2d at 171. Neither party bears the burden on appeal to prove harm or harmlessness. *Reeves*, 420 S.W.3d at 816.

Appellant argues that he "suffered harm" because the trial court's erroneous jury instruction allowed "the jury to review all the evidence obtained after Deputy McGregor approached [appellant]," and "[w]ithout the evidence following [his] . . . illegal detention," the State "could not have met its burden of proof." According to appellant, "[t]he evidence of slurred speech, red eyes, an unopened beer can, unsteadiness, and the odor of alcohol," and the video of appellant at the police station, should not have been considered by the jury due to appellant's "illegal detention."

Interactions between law enforcement officers and citizens are often characterized as consensual encounters, investigative detentions, or arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Arrests require either a warrant or probable cause, while investigative detentions constitute only brief seizures that are less intrusive than arrests and only require reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914–17 (Tex. Crim. App. 2011); *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Consensual encounters, notably, do not trigger Fourth Amendment protections. *Woodard*, 341 S.W.3d at 411.

Courts must look to the totality of the circumstances to determine whether an interaction between a citizen and a law enforcement officer is a consensual encounter or a seizure that implicates Fourth Amendment rights. *Id.* There is no "bright-line rule" governing when an encounter is consensual and when it is a seizure implicating Fourth Amendment rights. *Id.* And the primary question in determining whether an interaction between a law enforcement officer and a citizen is consensual or a seizure implicating Fourth Amendment protections is "whether a reasonable person in the defendant's shoes would have felt free to ignore the request or terminate the interaction." *Id.*; *see also Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991).

The law enforcement officer's behavior is especially important to this determination. *Woodard*, 341 S.W.3d at 411. Circumstances that can indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980). When an interaction starts out as a consensual encounter, physical force or a show of authority by the officer generally indicates that the interaction has escalated into a seizure. *Woodard*, 341 S.W.3d at 411.

Here, Deputy McGregor testified that when he arrived at the McDonald's restaurant, and prior to having had any contact with appellant, he saw a "vehicle . . . sitting in the [restaurant's] drive-through lane," blocking the flow of traffic. Appellant was "the only [person] in the vehicle," and he was sitting "behind the wheel." According to McGregor, he proceeded to park his patrol car "adjacent" to appellant's truck, but there is no evidence in the record to indicate that he blocked appellant's truck with the patrol car or used the patrol car's emergency lights. *Cf. Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd) ("initial interaction" between law enforcement officer and defendant, "after [officer] approached the car, was an encounter" where "nothing in the record suggest[ed] that the position of his [patrol] vehicle blocked [the defendant's car] or prevented [her]

from leaving" and defendant did not "allege that the patrol car's siren was activated").

Deputy McGregor further testified that when he arrived at the scene, his "first step was to check to see if anything medically was wrong with the driver." After speaking with EMS personnel, McGregor then went "to [s]peak with [appellant]." McGregor explained that he "initiate[d] contact" with appellant to fulfill his "community caretaking" function, to see "what was wrong," and to find out "what was going on." He explained that because he was "dispatched to a medical emergency," he "need[ed] to find out what was going on so [that he could] notify EMS" in case they had "missed" anything.

According to Deputy McGregor, his "first step," when he "made [initial] contact" with appellant, was "[t]o ask him what was going on, to gauge his awareness of the situation." It was during this initial contact that McGregor noticed that appellant had "slurred speech," "bloodshot" eyes, and a lack of "aware[ness] of his surroundings." At this time, McGregor also noted that appellant "[s]melled of alcohol" and had an "unopened can of [cold] beer" in his truck. *Cf. Zalman v. State*, No. 13-13-00471-CR, 2015 WL 512914, at *6 (Tex. App.—Corpus Christi Feb. 5, 2015, pet. ref'd) (mem. op., not designated for publication) (interaction between law enforcement officers and defendant was "a consensual encounter" where officers "approached the car," "asked [defendant] a question," defendant "responded," and

officers "observed that [defendant]'s eyes were red, glassy, and bloodshot, and . . . [he] gave off a strong odor of alcohol").

Notably, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434, 111 S. Ct. at 2386; *see also Woodard*, 341 S.W.3d at 413 ("A 'stop' to make an inquiry, on its own, does not show a seizure."); *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011) (law enforcement officer "just as free as anyone to stop and question a fellow citizen"). And nothing in the record shows that Deputy McGregor, the only law enforcement officer at the scene, displayed any weapons during his initial interaction with appellant or used force when he spoke to appellant. *See Mendenhall*, 446 U.S. at 554, 100 S. Ct. 1877; *cf. Lewis v. State*, 412 S.W.3d 794, 800 (Tex. App.—Amarillo 2013, no pet.) ("The encounter between [a law enforcement officer] and [the defendant] was consensual. [The officer] did not display any weapons or use any force to obtain [the defendant]'s compliance."). Accordingly, we hold that at the time McGregor observed appellant's "slurred speech," "bloodshot" eyes, lack of "aware[ness] of his surroundings," and odor of alcohol, and that he had an "unopened can of [cold] beer" in his truck, McGregor's interaction with appellant was a consensual encounter, not a detention.

We need not go further and determine whether any interactions between Deputy McGregor and appellant, beyond this point, constitute a detention. The

evidence elicited by the State from Deputy McGregor about his arrival at the scene and his initial contact with appellant, coupled with Everett's testimony at trial, is sufficient to establish the offense of driving while intoxicated. In other words, contrary to appellant's assertion, the State, to establish appellant's guilt, did not solely rely on evidence that arose after McGregor's detention of appellant.

Accordingly, we hold that appellant was not harmed by error, if any, in the trial court's article 38.23 jury instruction. *See Malone v. State*, 163 S.W.3d 785, 799–800, 802–03 (Tex. App.—Texarkana 2005, pet. ref'd) (error harmless where evidence "seized" "did not contribute to [defendant's] conviction"); *cf. Gonzales v. State*, No. 05-09-01296-CR, 2011 WL 5119440, at *4 (Tex. App.—Dallas Oct. 28, 2011, pet. ref'd) (not designated for publication) (defendant showed "some harm" where "State's evidence [solely] came from information obtained by the police as a result of a traffic stop"); *Vrba v. State*, 69 S.W.3d 713, 719 (Tex. App.—Waco 2002, no pet.) (defendant suffered "some harm" from omission of article 38.23 instruction because "record contains no evidence of [his] guilt independent of that obtained as a result of the stop" (internal quotations omitted)).

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

34